**Slip Op. 05 -111**

# UNITED STATES COURT OF INTERNATIONAL TRADE

TAO VAN TRINH,

        Plaintiff,

v.

UNITED STATES SECRETARY OF
AGRICULTURE,

        Defendant.

**Before: Jane A. Restani, Chief Judge**

**Court No. 04-00632**

## OPINION

[Remand final determination to the Secretary for reconsideration of plaintiff's TAA eligibility.]

Dated: August 29, 2005

Barnes, Richardson & Colburn (Lawrence M. Friedman, Louisa Vassileva Carney, and Nikolay A. Ouzounov) for the plaintiff.

Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (David S. Silverbrand); Jeffrey Kahn, of counsel, Office of General Counsel, Department of Agriculture, for the defendant.

Restani, Chief Judge: This matter is before the court on the plaintiff Tao Van Trinh's ("Trinh") motion for judgment on the agency record pursuant to United States Court of International Trade Rule 56.1. At issue is the United States Secretary of Agriculture's ("Secretary," "Agriculture," or "Department") determination denying Trinh's application for Trade Adjustment Assistance ("TAA").

Trinh alleges that the Secretary's determination was not based on a "legally complete set of facts," Pl.'s Br. at 2, i.e., it did not include Trinh's amended tax return after he had discovered an

inaccuracy in his original 2002 Individual Income Tax Return. Thus, Trinh asserts that the Secretary's final determination denying his application for TAA was unwarranted by the facts and, as a result, could not have been made in accordance with law or supported by substantial evidence. Accordingly, Trinh asks the court to grant his motion for judgment on the agency record or, in the alternative, to remand this determination, for "good cause" shown, to the Secretary for reconsideration of his eligibility for TAA cash benefits.

The Secretary of Agriculture claims that Trinh is not eligible for TAA cash benefits because he failed to meet all the statutory criteria for TAA eligibility—particularly that Trinh failed to file verifiable documentation, within the specified regulatory time frame, demonstrating a decline in net fishing income from 2001 to 2002. The Secretary further maintains that due to this documentation failure, Agriculture's determination was supported by substantial evidence on the record and otherwise in accordance with law, and consequently, the Secretary asks the court to deny Trinh's motion for judgment on the agency record, affirm Agriculture's determination, and enter judgment for the defendant, dismissing this case. The court remands.

## FACTUAL & PROCEDURAL BACKGROUND

Trinh, a shrimp boat operator, resides in Palacios, Texas. On December 11, 2003, subsequent to the November 19, 2003 FAS certification of Texas shrimp producers' eligibility for TAA benefits,[1] Trinh submitted a TAA application for individual producers through the Department's

---

[1] On October 21, 2003, the Texas Shrimp Association, Arkansas, Texas, filed a petition with Agriculture's Foreign Agricultural Service ("FAS") seeking certification for TAA benefit eligibility on behalf of Texas shrimp producers. See Trade Adjustment Assistance for Farmers, 68 Fed. Reg. 65,239 (Dep't Agric. Nov. 19, 2003) (notice). After conducting an investigation, the FAS Administrator "determined that increased imports of farmed shrimp contributed

(continued...)

local Matagorda County Farm Service Agency ("FSA") Office. Application For Trade Adjustment Assistance (TAA) for Individual Producers, Pl.'s App. 8 [hereinafter TAA Application].

On the same date, pursuant to TAA Application requirements,[2] Trinh also submitted his 2001 and 2002 tax returns, a farm operating plan, see Farm Operating Plan for Payment Eligibility Review for an Individual, Pl.'s App. 9 [hereinafter Farm Operating Plan], and an HELC and WC certification. See Highly Erodible Land Conservation (HELC) & Wetland Conservation (WC) Certification, Pl.'s App. 10. Trinh satisfied the TAA requirement of proof of technical assistance by receiving training and technical assistance on January 27, 2004, in Palacios, Texas. See Trade Adjustment Assistance – Technical Assistance Certification Form, Pl.'s App. 11; TAA Application, Pl.'s App. 8.[3]

---

[1](...continued)
importantly to a decline in the landed prices of shrimp in Texas by 27.8 percent during January 2002 through December 2002, when compared with the previous 5-year average." Id.; see also 19 U.S.C. § 2401a (Supp. II 2002) (setting group eligibility requirements for TAA certification). The notice also stated that shrimp producers in Texas were eligible to apply for program benefits, and that those shrimpers certified as eligible for TAA benefits "may apply to the Farm Service Agency for benefits through February 9, 2004." Trade Adjustment Assistance for Farmers, 68 Fed. Reg. at 65,239.

[2] As part of FSA's TAA application, the applicant is required to (1) produce verifiable documentation of production of the commodity and the amount, (2) provide supporting documentation verifying that net fish income declined from the latest year in which no adjustment assistance payment was received, (3) provide supporting documentation, if requested, that adjusted gross income is in accordance with other Department regulations, and (4) provide proof that the applicant received technical assistance from the Cooperative State Research, Education, and Extension Service of the United States Department of Agriculture ("CSREES") or ("Extension Service"). See TAA Application at Pl.'s App. 8; see also 7 C.F.R. § 1580.102. Additionally, the TAA application states, "all required documentation [must be submitted] on or before September 30 of the current fiscal year [2003]." TAA Application at Pl.'s App. 8.

[3] The TAA Application shows that Trinh supplied the documentation requested in Items
(continued...)

Trinh next received a letter from the Matagorda County FSA Committee, dated April 28, 2004, stating that it had determined, based on a review of his previously submitted farm operating plan, that Trinh was "one 'person' for payment limitation purposes, separate and distinct from any entity or any other individual." Letter from USDA Matagorda County FSA Office to Trinh (Apr. 28, 2004), Pl.'s App. 12. Approximately four months later, Trinh received a letter dated August 16, 2004, again from the Matagorda County FSA Committee, denying his application for TAA benefits and stating that "[t]he Income Taxes [he] provided did not support the certification requirement to be eligible for TAA payment." Letter from USDA Matagorda County FSA Office to Trinh (Aug. 16, 2004), Pl.'s App. 13 [hereinafter FSA Determination] (requiring net fishing income for 2002 to have been less than 2001 net fishing income). While the FSA's letter stated that the issue "is not appealable," it also advised Trinh that he could seek review of the appealability determination by writing to the National Appeals Division ("NAD") Director within thirty calendar days of the letter's date,[4] explaining why he thought the issue was appealable. Id.

Trinh timely submitted a letter to NAD, dated August 14, 2004, but postmarked September 15, 2004, requesting an appeal. Letter to NAD (postmarked Sept. 15, 2004), Pl.'s App. 14; see also

---

[3](...continued)
9A–9D of Part C. See id. In particular, Item 9B asks: "Has the producer provided supporting documentation verifying that the net farm or net fish income declined from the latest year in which no adjustment assistance payment was received?" Id. The question clearly designates that section as being for "County Office Use Only," and shows the "yes" box checked with a date of December 11, 2003, indicating that someone in the Matagorda County FSA Office looked over Trinh's application at filing and thought he had provided all the necessary information. Id.

[4] As the FSA letter was dated August 16, 2004, Trinh's letter would need to be postmarked by September 15, 2004 in order to be in accordance with NAD appeal procedures. See National Appeals Division, 7 C.F.R. Part 11.

NAD Timeliness Worksheet (Sept. 20, 2004), Pl.'s App. 15 (showing timely postmark of

appealability/appeal request). Although his letter to NAD is somewhat confusing, Trinh explained

that, "[d]ue to low shrimp price[s]" for 2002, his 2002 income was less than his 2001 income,

despite "work[ing] more and bring[ing] in more poundage." Letter from Trinh to NAD (dated Aug.

14, 2004), Pl.'s App. 16. Because of these factors, Trinh stated that he "still ha[d] less income" in

2002, despite any contrary indication from his tax returns, and tried to explain that "bigger repairs

on the boat in 2001 . . . is why [his] net imcome [sic] for 2002 is higher than 2001, but only by

58.00."[5] Id.

In response to his NAD appeal letter, Trinh received a response letter from NAD, dated

September 30, 2004, stating that "[t]he Agency decision is appealable because it is adverse to you

as an individual participant." Letter from USDA NAD Office to Trinh (Sept. 30, 2004), at 1, Pl.'s

App. 17[6] (citing 7 C.F.R. § 1580.505[7] for authorization to obtain reconsideration and review of

---

[5] Trinh's 2002 tax return showed a net profit from commercial fishing of $10,588,
Profit/Loss, Pl.'s App. 1, and an adjusted gross income of $9,842, Form 1040 (2002), Pl.'s App.
2. His 2001 tax return showed a net profit of $10,530 and an adjusted gross income of $9,786.
Form 1040 (2001), Pl.'s App. 5. According to his tax returns, therefore, Trinh's 2002 net profit
from commercial fishing was $58 greater than his 2001 net profit; whereas his 2002 adjusted
gross income was $56 greater.

[6] Noting that Trinh has "a right to a NAD hearing within 45 days after the NAD regional
office receives its copy of this ruling." Id. at 2.

[7] The 7 C.F.R. § 1580.505 regulation allowing a reconsideration and review of FSA
determinations by NAD was amended on October 14, 2004, became effective on November 1,
2004, and now provides for appeal of final determinations of TAA benefits applications directly
to the United States Court of International Trade. See Trade Adjustment Assistance for Farmers,
69 Fed. Reg. 63,317, 63,317–18 (Dep't. Agric. Nov. 1, 2004) (final rule; technical amendments)
(explaining that although the prior regulation [under which Trinh initially appealed] had

(continued...)

determinations made in accordance with appeal regulations at 7 C.F.R. § 780.7(e), which "provides that nothing in this part prohibits a participant from filing an appeal . . . with NAD in accordance with the NAD regulations").[8]  Accordingly, Trinh received a letter from NAD, dated October 6, 2004, constituting a notice of appeal and request for the agency record and assigning a Hearing Officer to the appeal.  USDA Notice of Appeal & Req. for Agency R. (Oct. 6, 2004), at 1, Pl.'s App. 18 (stating that Trinh "may submit additional information . . . by October 25, 2004" (nearly a month after the September 30 regulatory deadline)).  Additionally, in a letter from NAD dated October 26, 2004, Trinh received notice that a prehearing conference had been scheduled, pursuant to 7 C.F.R. § 11.8.  USDA Notice of Prehearing Conference (Oct. 26, 2004), at 1, Pl.'s App. 19.

A few days later, however, Trinh received a letter from NAD, dated October 28, 2004 (two days after the date of NAD's previous letter that had specified the prehearing conference information), informing him that his "NAD appeal is moot and any further NAD processing of [his] appeal should cease."  Letter from USDA NAD Office to Trinh (Oct. 28, 2004), at 1, Pl.'s App. 20 [hereinafter NAD Determination].  Furthermore, according to the letter, the NAD appeal was moot because the Department's Texas State FSA Office informed NAD that it was "withdrawing

_____

(...continued)
specified that the FSA administrative appeal process should be used to resolve TAA application disputes, this had led to confusion:  TAA applicants thought they could appeal to NAD; but because appeals from NAD go to the United States District Courts, this was not intended:  the Trade Act, 19 U.S.C. § 2395, grants jurisdiction over TAA claims exclusively to the Court of International Trade).

[8] 7 C.F.R. § 780.7(e) was subsequently amended by 70 Fed. Reg. 43,262 (Consolidated Farm Service Agency July 27, 2005) (interim final rule).  See 7 C.F.R. § 11.6 (providing NAD regulations governing appealability).

[the Matagorda County] FSA's adverse decision." Id. The letter did not, however, specify the reason for the withdrawal of the adverse decision, the consequences the withdrawal would have on his appeal, or the Department's next steps.[9] It merely advised Trinh that if he did not want the NAD appeal to be dismissed, he could write to the NAD-appointed Hearing Officer within five days and tell him why the case should not be dismissed.[10] See NAD Determination, Pl.'s App. 20.

On November 23, 2004, Agriculture's Foreign Agricultural Service ("FAS") denied Trinh's application for TAA benefits. See Letter from USDA FAS Office to Trinh (Nov. 23, 2004), at 1, Pl.'s App. 21. According to the letter, "[t]he Farm Service Agency (FSA)[11] has withdrawn its initial

---

[9] Nor does it appear, at least from the evidence before the court, that either the Texas State FSA Office or the Matagorda County FSA Office provided any explanation to Trinh of the reason for the withdrawal of the adverse decision, or of the likely effect this would have on his TAA application. Based on a review of Agriculture's Appeals regulations, it appears the withdrawal was due to the November 1, 2004 change in Agriculture's appeals process for review of final determinations, even though these procedures did not become effective until four days after the date of the NAD letter. See supra note 7. But this information was not communicated to Trinh and would have only been available to him via the Federal Register.

[10] While there is no evidence that Trinh wrote to NAD arguing why it should not dismiss his appeal, it appears that even had he done so, it likely would have been to little avail. Also, while this regulatory change altered the appeal process, granting the court jurisdiction after a final determination by the Department, see 7 C.F.R. § 1580.505; supra note 7, it did not specify the administrative appeal procedure. Given the Texas State FSA's withdrawal of the County FSA's initial determination, FAS's subsequent, final FAS determination, therefore, constitutes both an initial and final negative determination, with no further appeal available at the administrative level—this, despite NAD's prior conclusion that Trinh had "a right" to an appellate administrative hearing. See supra note 6.

[11] Although the FAS letter does not specify, its reference to the FSA and to the FSA's withdrawal of its initial disapproval, presumably refers to the Texas State FSA Office's withdrawal, mentioned in the NAD letter dated October 28, 2004. See NAD Determination, Pl.'s App. 20.

disapproval of [Trinh's] application and referred it to the FAS for a <u>final determination</u> of [his] eligibility." <u>Id.</u> (emphasis added). The letter also stated that "FAS reviewed the information that [Trinh] provided in [his] application" and "disapproved" him for the 2002 Texas shrimp TAA cash benefit because his "net fishing income for 2002 did not decline from 2001, the pre-adjustment year." <u>Id.</u> Moreover, the letter stated that it was the "final FAS disapproval of [Trinh's] application" and that "FAS will disregard any appeal . . . already made to FSA or to the [NAD] because FAS makes the final decision regarding [Trinh's] application." <u>Id.</u> The letter also advised Trinh that he could request judicial review of the final, negative FAS determination by contacting the United States Court of International Trade within sixty days. <u>Id.</u>

On December 6, 2004, Trinh filed an Amended Individual Income Tax Return for 2002, "because he discovered additional boat repair receipts which had been inadvertently left off his 2002 Tax Return." Pl.'s Br. at 6. <u>Compare</u> <u>Profit/Loss</u>, Pl.'s App. 1 (listing $2,369 for repairs and maintenance in original 2002 Schedule C (Form 1040)), <u>with</u> <u>Form 1040X: Amended U.S. Individual Income Tax Return</u> and <u>Schedule C (Form 1040) 2002: Profit or Loss From Business - Amended</u>, Pl.'s App. 22 [hereinafter <u>Amended 2002 Tax Return</u>] (listing $2,607 for repairs and maintenance in both the "Form 1040X, Part II: Explanation of Changes to Income, Deductions, and Credits," and on the amended 2002 Schedule C (Form 1040)). Thus, relative to the 2001 amounts, the amended 2002 values represent an adjusted gross income decline of $165, versus the prior increase of $56.

The next day, on December 7, 2004, Trinh filed a request with the court seeking judicial review of Agriculture's FAS adverse determination. <u>Letter from Trinh to United States Ct. Int'l</u>

Trade (dated Dec. 7, 2004), Pl.'s App. 23. In this letter, Trinh stated that because Agriculture's ruling was premised on his previously submitted, incorrect federal tax returns, which showed that "the net income from [his] 2001 federal tax return seemed to be greater than [his] 2002 net income," it "was based on inadequate or incorrect information." Id. Additionally, he informed the court that he had discovered additional repair receipts that had been inadvertently left off his original 2002 return, and enclosed these amended 2002 tax forms. The Clerk of the Court accepted Trinh's letter as fulfilling, in principle, the requirements of the summons and complaint for commencement of a civil action to review a final determination of TAA eligibility, and in a letter dated December 21, 2004, acknowledged receipt of Trinh's request for review and the court's acceptance of the action. Additionally, the Clerk served copies of the documents comprising the summons and complaint upon the United States Departments of Agriculture and Justice. On March 17, 2005, the court granted Trinh's application to proceed in forma pauperis and appointed counsel to represent Mr. Trinh in this action. On June 6, 2005, Trinh filed this motion for judgment on the agency record; on June 30, 2005, the Government responded in opposition to Trinh's motion; and on July 18, 2005, Trinh replied to the Government's response.

## JURISDICTION & STANDARD OF REVIEW

The court has jurisdiction pursuant to 19 U.S.C. § 2395(c) (2000).[12] The court, in reviewing a challenge to one of Agriculture's determinations regarding eligibility for trade adjustment assistance, will uphold the challenged determination if the factual findings are supported by

---

[12] "The Court of International Trade shall have jurisdiction to affirm the action of the . . . Secretary of Agriculture . . . or to set such action aside, in whole or in part." Id.

substantial evidence on the record and its legal determinations are otherwise in accordance with law. 19 U.S.C. § 2395(b); see also Former Employees of Shaw Pipe, Inc. v. United States Sec'y of Labor, 21 CIT 1282, 1284–85, 988 F. Supp. 588, 590 (1997) (holding that substantial evidence is "more than a 'mere scintilla,' but sufficient evidence to reasonably support a conclusion") (internal quotations and citation omitted). The court, however, may also remand the case and order the Secretary to further investigate for "good cause shown." 19 U.S.C. § 2395(b).

### DISCUSSION

### I.      Agriculture's Determination Denying Trinh TAA Benefits Is Unsupported By Substantial Evidence And Not In Accordance With Law

There is no dispute before the court regarding whether Trinh satisfied the statutory requirements enumerated in 19 U.S.C. § 2401e(a)(1)(A)–(B), (D)[13] or the regulatory requirements listed in 7 C.F.R. § 1580.301(b), (e)(1)–(3), (5).[14] The only issue before the court, regarding Trinh's

---

[13] For agricultural commodity producers to qualify for TAA benefits, § 2401e(a) enumerates several conditions that must be met. See 19 U.S.C. § 2401e(a)(1). In pertinent part, it states that "[p]ayment of a[n] adjustment assistance . . . shall be made to an adversely affected agricultural commodity producer covered by a certification . . . who files an application for such assistance within 90 days after the date on which the Secretary [of Agriculture] makes a determination and issues a certification of eligibility under section 293 [19 U.S.C. § 2401b]." Id. § 2401e(a)(1). In addition to this timeliness requirement, the statute requires the producer to (A) submit sufficient information to establish the amount of the commodity covered by the application, (B) certify that it has not received cash benefits under any other provision of the title, (C) establish that net farm (or fish income) for the most recent year is less than the net income for the latest year in which no adjustment assistance was received, and (D) certify that it has met with an Extension Service employee. Id. § 2401e(a)(1)(A)–(D) (These statutory requirements are incorporated within Part C of the TAA Application for Individual Producers as Items 9A through 9D. See TAA Application, Pl.'s App. 8).

[14] Agriculture has adopted various regulations that implement these statutory eligibility
(continued...)

TAA application, is whether he satisfied the requirement that his net fishing income in 2002 was to have been less than it was in 2001.  See 19 U.S.C. § 2401e(a)(1)(C); 7 C.F.R. § 1580.301(e)(4).

The Government argues that because Trinh "never submitted documentation demonstrating a decline in income to USDA," he "did not satisfy the statutory or regulatory requirements necessary in order to receive cash benefits pursuant to 19 U.S.C. § 2401e."  Def.'s Resp. Br. at 10.  In essence, its contention is that (1) both 19 U.S.C. § 2401e(a)(1)(C) and 7 C.F.R. § 1580.301(e)(4) require Trinh's net fishing income to have been less in 2002 than in 2001; (2) that pursuant to 7 C.F.R. § 1580.303(a), Trinh must have provided certification of this decline by September 30, 2004 to qualify for TAA benefits; (3) because his original 2001 and 2002 tax returns show an increase in net income of $58, he did not demonstrate that he qualified for benefits; and (4) although his amended 2002 tax return does show a drop in net income of $180, it was never submitted to Agriculture, and even had it been, it should not be considered because the 2002 amended tax return was not filed until December 6, 2004, "after the USDA made its final determination finding him ineligible for TAA cash benefits," and well after the regulatory deadline of September 30, 2004.  Def.'s Resp. Br. at 11.

---

[14](...continued)
requirements.  See 7 C.F.R. § 1580.301(b) (implementing the statutory timeliness requirement and allowing an eligible producer to qualify for TAA benefits "by submitting to FSA a designated application form at any time after the certification date but not later than 90 days after the certification date"); 7 C.F.R. § 1580.301(e) (implementing the statutory certification requirements, such as receipt of technical assistance from the Extension Service and certification of a decline in net fishing income relative to the producer's pre-adjustment year).  Additionally, § 1580.303 of Agriculture's regulations specify that "[a]pplicants shall satisfy by September 30 all certifications of § 1580.301(e) to qualify for adjustment assistance payments."  7 C.F.R. § 1580.303(a).

Trinh disagrees. He argues that the Secretary's initial negative determination, through the Matagorda County FSA Office, was based on his 2001 and original 2002 tax returns, and that his September 15, 2004 appeals letter to NAD "constitutes an attempt to explain on the administrative record [his] belief that he is entitled to TAA benefits as he had suffered a noticeable decline in income although his Tax Return indicated that his 2002 income exceeded his 2001 income by $58.00." Pl.'s Br. at 8. Furthermore, Trinh argues that although NAD ruled that his case was appealable, the appeal never occurred, due to the Texas State FSA's withdrawal of its adverse decision; consequently, the Secretary's subsequent final disapproval, via the FAS, on the same grounds as FSA's initial denial, was based "only on the facts available at the time of the initial administrative determination," which included the "inadvertent omission of repair receipts," and "not . . . on the full and accurate facts" represented by his amended 2002 tax return. Id.

In reviewing the Department's TAA provisions, the Government argues that the court must give substantial deference to Agriculture's methodology. It denies Trinh's claim that "the Secretary based his decision . . . on facts that were incomplete and inaccurate at the time of initial determination," Pl.'s Br. at 10, and argues there was no way Agriculture abused its discretion because evidence of the amended tax return was not in the administrative record at the time the agency made its final determination—it "did not even exist at the time of the agency's determination." Def.'s Resp. Br. at 12. Moreover, because TAA funds are appropriated on a fiscal year basis, the "September 30 deadline is necessary to obligate the funds properly." Id. at 13. "Without the deadline, the amount of distributions made by USDA could never be final, and there would never be an end to the processing of TAA distributions." Id.

### A.     TAA's Remedial Purpose, Ex Parte Process, And Requirement To Conduct Investigations With Utmost Respect For Worker Interests

This is a case of first impression. While the court has decided many cases involving petitions for TAA benefits, given the relative newness of the Trade Adjustment Assistance for Farmers Program (the enabling statutory provisions were passed on August 6, 2002, and only became effective 180 days later, on February 2, 2003), there is little case law directly addressing Agriculture's TAA program or the statutory and regulatory provisions at issue here. As an extension of the original TAA program (enacted as part of the Trade Act of 1974), the TAA for Farmers Program, however, has the same purpose: "to provide adequate procedures to safeguard American . . . labor against unfair or injurious import competition, and to assist industries, firm [sic], workers, and communities to adjust to changes in international trade flows." Trade Act of 1974, Pub. L. No. 93-618, 88 Stat. 1978 (1975) (codified as amended at 19 U.S.C. § 2102(4) (2000)); see also Trade Adjustment Assistance for Farmers, 68 Fed. Reg. 50,048, 50,049 (Dep't Agric. Aug. 20, 2003) (final rule) ("The purpose of TAA is to assist producers to adjust to imports by providing technical assistance to all and cash payments to those facing economic hardship.").

Because of this shared congressional intent, the statute governing the TAA for Farmers Program should be construed in a manner similar to the manner in which the court has construed other TAA statutes. See Former Employees of Elec. Data Sys. Corp. v. United States Sec'y of Labor, 350 F. Supp. 2d 1282, 1291–92 (Ct. Int'l Trade 2004) ("When construing a statute, the duty of the court 'is to give effect to the intent of Congress.'") (quoting Flora v. United States, 357 U.S. 63, 65 (1958)). In interpreting the original TAA legislation, the court has stated, "it is evident that

the law is and was intended to be remedial in nature . . . in the sense of providing assistance to displaced workers." Former Employees of Champion Aviation Prods. v. Herman, No. 98-02-00299, Slip Op. 99-48 at 6 (Ct. Int'l Trade June 4, 1999). Furthermore, as remedial legislation, "[t]he trade adjustment assistance [TAA] statutes . . . are to be construed broadly to effectuate their intended purpose." Former Employees of Elec. Data Sys., 350 F. Supp. 2d at 1290 (quotations and citations omitted); see also Former Employees of Champion Aviation Prods., 23 CIT at 352 ("When interpreting remedial legislation, the court is to construe it broadly to effectuate its purpose."); Gardner v. Brown, 5 F.3d 1456, 1463 (Fed. Cir. 1993) (describing World War Veterans' Act as remedial legislation that "should be construed broadly to the benefit of the veteran" (citation omitted)).

The court has also held that "any rigidity in implementation of the [TAA] statute would undermine the remedial nature of the Act," Former Employees of Elec. Data Sys., 350 F. Supp. 2d at 1290, and "because of the ex parte nature of the [TAA] certification process, and the remedial purpose of the trade adjustment assistance program, [the Department] is obliged to conduct [its] investigation with the utmost regard for the interests of the petitioning workers," Former Employees of Oxford Auto. UAW Local 2088 v. United States Dep't of Labor, No. 01-00453, Slip Op. 03-129 at 14 (Ct. Int'l Trade Oct. 2, 2003) (second alteration in original) (emphasis added) (quoting Stidham v. Dep't of Labor, 11 CIT 548, 551, 669 F. Supp. 432, 435 (1987) (citation omitted)).[15]

---

[15] See also Former Employees of Pittsburgh Logistics Sys., Inc. v. United States Sec'y of Labor, No. 02-00387, Slip Op. 03-21 at 8 n.6 (Ct. Int'l Trade Feb. 28, 2003) (likening the court's duty towards a pro se TAA petitioner to the duty owed by an administrative law judge to a pro se

(continued...)

Given congressional and departmental statements that the statute is remedial, the court's intention to construe such remedial statutes broadly to effectuate their intended purpose, the threshold requirement of a reasonable inquiry, the ex parte nature of the certification process, and the duty owed to a pro se applicant, the salient question is whether Agriculture conducted its investigation with the utmost regard for Trinh's interests. With little case law addressing the requisite investigatory standard directly applicable to Agriculture cases, it is instructive to look at the standards established in TAA case law involving the Labor Department. As these cases typically affect larger corporations with several different facilities and address whether there was a shift in production due to foreign imports, they can be complicated and are highly fact dependent; thus, they are not completely analogous to the instant case, which involves a self-employed shrimper. Analysis of this case law, nonetheless, is instructive here.

### B.      Agriculture Did Not Meet The Reasonable Inquiry Threshold

Thus, as the court has previously stated, "[w]hile [the Department] has 'considerable discretion' in conducting its investigation of TAA claims, 'there exists a threshold requirement of reasonable inquiry. Investigations that fall below this threshold cannot constitute substantial evidence upon which a determination can be affirmed.'" Former Employees of Sun Apparel of Texas v. United States Sec'y of Labor, No. 03-00625, Slip Op 04-106 at 15 (Ct. Int'l Trade Aug. 20, 2004) (emphasis added) (quoting Former Employees of Chevron Prods. Co v. United States Sec'y

---

(...continued)
social security benefits claimant: to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts") (quotations and citation omitted).

of Labor, 245 F. Supp. 2d 1312, 1318 (Ct. Int'l Trade 2002) (quotation omitted)).  Moreover, the

court must sustain the Secretary's factual determinations, under the substantial evidence standard,

only "so long as they are reasonable and supported by the record as a whole."  See Hyundai Elecs.

Co., Ltd. v. United States, 23 CIT 302, 306, 53 F. Supp. 2d 1334, 1338 (1999).

In reviewing the "record as a whole," and Agriculture's determination denying Trinh's

application for TAA benefits, the court must look to the administrative record before it.  See 28

U.S.C. § 2640(c) (2000); see also Int'l Union v. Reich, 22 CIT 712, 716, 20 F. Supp. 2d 1288, 1292

(1998) ("The Court decides an adjustment assistance [TAA] case based on the administrative record

before it.").[16]  Nonetheless, "the Court cannot uphold a determination based upon manifest

inaccuracy or incompleteness of record when relevant to a determination of fact."  Former

Employees of Pittsburgh Logistics Sys., Slip Op. 03-21 at 20.  Therefore, pursuant to the court's

Rule 56.1, a party may contest an administrative determination by showing "how the determination

may be unwarranted by the facts to the extent that the agency may or may not have considered facts

which, as a matter of law, should or should not have been properly considered."  U.S. Ct. Int'l Trade

---

[16] But cf. Ammex, Inc. v. United States, 23 CIT 549, 551–54, 62 F. Supp. 2d 1148, 1153–55 (1999) (discussing United States Court of International Trade Rule 72(a), "Documents Furnished in All Other Actions Based Upon the Agency Record," (now Rule 73.3, pursuant to the renumbering of the Rules) as not conclusively defining the contents of the administrative record, unlike Rule 71, "Documents in an Action Described in 28 U.S.C. § 1581 (c) [countervailing duty and antidumping duty proceedings, under 19 U.S.C. § 1516a] or (f) [civil actions involving application for an order directing the administering authority or the International Trade Commission to make confidential information available under 19 U.S.C. § 1677f(c)(2)]," (renumbered as Rule 73.2)). This action, which involves neither countervailing duty or antidumping duty proceedings, nor limited disclosure of proprietary information under protective order, falls under Rule 73.3 (old Rule 72(a)), "Documents Furnished in All Other Actions Based Upon the Agency Record."

R. 56.1(c)(1)(B).

If the court determines the Department did not meet this threshold requirement of reasonable inquiry, "the court, for good cause shown,[17] may remand the case to [the appropriate Secretary, viz, Agriculture,] to take further evidence, and such Secretary may thereupon make new or modified findings of fact and may modify his previous action, and shall certify to the court the record of the further proceedings." 19 U.S.C. § 2395(b). "Good cause [to remand] exists if the Secretary's chosen methodology is so marred that his finding is arbitrary or of such a nature that it could not be based on substantial evidence." Former Employees of Galey & Lord Indus. v. Chao, 219 F. Supp. 2d 1283, 1286 (Ct. Int'l Trade 2002) (internal quotations and citations omitted); see also 19 U.S.C. § 2395(b).

Thus, while the Government is correct that the Department's methodology is entitled to substantial deference, this is only if its investigation passes the "reasonable inquiry" threshold, and if its factual determinations are supported by the "record as a whole."  In this case, the Department failed to meet the threshold of reasonable inquiry because it did not investigate beyond Trinh's application, failing to consider the conflicting information in his tax return and the county FSA's notations on his application, and ignoring his relevant and timely submission seeking appeal and providing notice of these discrepancies. Moreover, in stressing Trinh's failure to meet the regulatory deadline, despite the nearly de minimis nature of his original disqualification ($56), Agriculture disregarded the statute's remedial purpose (and its own regulations, which, by allowing waiver of

---

[17] Although the court must view the record before it, and "good cause" is not an independent standard allowing consideration of extra-record evidence to prove the record's inadequacy, "[d]e novo evidence may serve to highlight the inadequacy, once [the inadequacy] has been established." Former Employees of Pittsburgh Logistics Sys., Slip Op. 03-21 at 8, n.6.

non-statutory deadlines, see 7 C.F.R. § 1580.501(d), emphasize TAA's remedial nature). And lastly, by not appreciating how its own inaction and unexplained change in administrative appellate procedures might have led to Trinh's failure to meet the regulatory deadline, Agriculture did not fulfill its duty to act in the utmost regard for Trinh's interests.

In prior TAA cases, the court has held that Labor investigations, which have disregarded potential factual inconsistencies, or which have relied on nothing more than the TAA application, have not met the reasonable inquiry threshold necessary to constitute the requisite substantial evidence upon which a determination can be affirmed. Similarly, in Trinh's case, despite potential factual inconsistencies in the application, Agriculture's final determination relied on nothing more than the original TAA application, with no evidence of any investigatory effort to substantiate the discrepancies, or of any further follow-up with Trinh regarding his application.

For example, in Former Employees of Pittsburgh Logistics Sys., Labor determined that an increase in steel imports was found to have "contributed importantly to the decline in sales or production and to the total or partial separation of workers," and certified LTV Steel employees for TAA benefits. Slip Op. 03-21 at 2. The plaintiffs, former employees at a separate firm, Pittsburgh Logistics Systems ("PLS"), worked on-site at LTV's facilities, and were also terminated. Id. at 2–3. The former PLS employees applied for TAA certification, claiming they, too, were terminated due to LTV's discontinuance of production. Id. In denying their certification, Labor stated that the plaintiffs were "service workers," engaged in "warehousing and distribution services," but not in production of an article, as required by the Trade Act. Id. at 3–4. In remanding back to Labor, the court found the investigation inadequate, stating:

> [T]he petitioners were not contacted for further input at all . . . [and while t]hat may satisfy compliance with procedural due process, and it may well be that in a straight-forward case an investigator is justified in determining that _further_ contact with petitioners is unnecessary to establishing all the relevant facts . . . that does not relieve the administrator of having the 'utmost regard' towards petitioners, _especially those unrepresented by counsel_, when undertaking fact-finding.

Id. at 15–16 (emphasis added) (citation omitted). As with Agriculture's investigation into Trinh's application, Labor merely relied on the plaintiffs' original application and justified its decision on the "strict time constraints within which [Labor] must complete its numerous investigations." Id. at 6 (citation omitted). In Former Employees of Alcatel Telecomm. Cable v. Herman, the court stated, "the Department relied on nothing more than the [TAA] questionnaire in making its determination . . . [and] did nothing to verify the accuracy of . . . responses to the questions in the [questionnaire]." 24 CIT 655, 662, 664 (2000) (finding Labor's investigation inadequate because the "Department did not conduct a field investigation, confer on the telephone or in writing with employees or other sources regarding the veracity of . . . claims").

Similarly, in Former Employees of Sun Apparel, laid-off garment workers challenged Labor's determination that they were not eligible for TAA benefits because they did not meet the statutory criteria. Slip Op. 04-106 at 2. The petition filed by the firm's HR manager on behalf of the former employees indicated that the workers produced jeans but that the job losses were not due to a shift in production to a foreign country. Id. at 3–4. In concluding that Labor's determinations were not supported by substantial evidence on the record and that good cause existed to remand for further investigation, the court stated, in part, that the "agency's negative determination wholly ignored the allegations made in the workers' . . . accompanying letters." Id. at 8. Furthermore, in discussing

Labor's investigation after the employees' repeated requests for reconsideration, which comprised

two e-mails to the employer's HR manager asking four questions, the court noted: "[t]hese e-mail

exchanges constituted the full extent of Labor's investigation into the workers' claims." Id. at

10–11.  Additionally, the court noted:

> Due to Labor's disregard of its statutory duty [citing 19 U.S.C. § 2271(a)(3),
> requiring Labor to promptly publish notice in the Federal Register that it has
> received a petition and initiated an investigation], the displaced workers'
> claims were ignored for over three months while the agency completed its
> investigation into [another petition the employer had filed on the workers'
> behalf] and issued its negative determination.  The entire investigation
> consisted of two communications with only one individual . . . . Such a
> limited investigation fails to provide substantial evidence upon which Labor
> could base its determination . . . .

Id. at 16–17.  "[T]he inconsistency between the statements of the [workers] and the statements of

the company official alone would have necessitated further agency investigation of the precise nature

of the [employees'] work." Id. at 20 (alteration in original) (quoting Former Employees of Chevron

Prods Co., 245 F. Supp. 2d at 1325).

Trinh's case is somewhat similar to these, in which the court found Labor's investigations

inadequate and held that the Department did not act with utmost regard for the workers' interests.

As in Former Employees of Pittsburgh Logistics Sys., here there were no notes or other indication

of any investigation into the veracity of Trinh's September 15 letter, which tried to explain that,

despite the information in his tax returns, he did meet the statutory and regulatory criteria because

his net income had declined.  And as with Former Employees of Sun Apparel, Agriculture's final

determination "wholly ignored" the claims Trinh made in his "accompanying letter."  Indeed,

Agriculture's final determination specifically noted that it had relied solely on the information Trinh

had provided in his initial application. In terms of the sufficiency of contact regarding an investigation, in Sun Apparel, the court held that Labor's two emails to Sun Apparel's HR manager were inadequate. In Agriculture's investigation of Trinh's case, there was no contact with Trinh, apart from his submission of documents. It is true that Labor's investigation in Sun Apparel, which concerned whether there was a shift in production to a foreign country, and in Alcatel Telecomm., which involved two separate petitions that were filed, were more complicated; nonetheless given the remedial nature of the statute and the heightened duty owed to pro se applicants, once Trinh alerted the agency to a possible discrepancy, Agriculture should have continued its investigation.

Specifically, Agriculture should have been prompted to further action by Trinh's appeal letter, given the discrepancy between Trinh's originally filed tax returns and the Matagorda County FSA Office's notations on his TAA Application, indicating that Trinh had provided supporting documentation to meet all statutory and regulatory requirements. See TAA Application, Pl.'s App. 8; supra note 3. Consequently, in view of the duty to act with the utmost regard for Trinh's interests, these circumstances, together with the timely appeal letter, should have at least suggested that other supporting documentation was missing or lost from the record, and prompted the Department to further investigatory action, given that the statute does not mandate what information is required to establish a decline in net fishing income, see 19 U.S.C. § 2401e(a)(1)(c) ("The producer's net farm income (as determined by the Secretary) . . . ."), and that Agriculture's regulations do not specify that only tax returns will suffice, see 7 C.F.R. § 1580.301(e)(6).[18]  Agriculture's inaction simply

---

[18] "To comply with certifications in paragraph (e)(4) of this section [which includes

(continued...)

demonstrates that it did not meet the reasonable inquiry threshold.

**C.      Trinh's Failure To Fully Support His Application
          Is Not Fatal To His Claim**

This case is also different from an ordinary failure to timely supply sufficient supporting information, because of the confusing changes in procedures. After receiving notification of the County FSA's initial determination, Trinh timely responded, asking for an appeal from NAD. After NAD's acceptance of the appeal, it provided notice that Trinh could submit additional information to the NAD-appointed Hearing Officer by October 25, 2004. See USDA Notice of Appeal & Req. for Agency R., Pl.'s App. 18. Although this was the first notice Trinh received that he could supplement the record, this was already past the regulatory deadline, because of the Department's delay in processing Trinh's application. That notwithstanding, Trinh's second communication from NAD, after its prehearing conference notice, was its October 28, 2004 letter stating that his NAD appeal was moot because the Texas State FSA had withdrawn its adverse decision. Yet there was no information describing what this meant or the Department's next steps. Trinh had no further communication until November 23, 2004, when FAS issued its final determination, expressly stating that any appeal made to NAD would be disregarded. Thus, any supplemental information that Trinh might have tried to enter into the record would have been disregarded. After the Texas State FSA

---

(...continued)
certification of a decline in net fishing income], an applicant shall provide either . . . (i) Supporting documentation from a certified public accountant or attorney, or (ii) Relevant documentation and other supporting financial data, such as financial statements, balance sheets, and reports prepared for or provided to the Internal Revenue Service or another U.S. Government agency." 7 C.F.R. § 1580.301(e)(6).

withdrew its initial determination, the FAS determination essentially represented the Department starting over. But as a final determination, with review limited only to the court, FAS's negative determination was an initial and final administrative determination, with no possible administrative appeal. Unlike the former Alcatel Telecommunications Cable employees, Trinh had no opportunity to submit information in connection with a request for administrative reconsideration of the Secretary's denial. Trinh had properly appealed, pursuant to the Department's policies, but the Department changed its policies and merely withdrew his appeal. This process, changed midstream for Trinh's application and, unaccompanied by explanation, does not represent action conducted with the utmost regard for Trinh's interest.

Trinh should not be penalized for confusion surrounding the changed appellate procedures. The Government's focus on the regulatory deadline, moreover, contravenes the remedial purpose of the statute. Granted, a deadline is needed to finalize the processing of TAA distributions, especially given the limited appropriations for each fiscal year and statutory requirement that cash benefits be prorated whenever claims exceed the allocated $90 million. See 19 U.S.C. § 2401g (authorizing appropriations "not to exceed $90,000,000 for each of the fiscal years[19] 2003 through 2007" and requiring "proportionate reduction" when claims exceed the authorized appropriation amount). But this regulatory deadline should not override the statute's purpose and was merely intended to help further the goal of providing rapid relief.

When it initially promulgated its final rule implementing the new TAA for Farmers Program,

---

[19] The Government's fiscal year is not based on a calendar year; instead, it begins on October 1 and runs until September 30 of the following year.

Agriculture explained that "TAA is intended to provide rapid relief to producers," but that due to the limited funding and need to prorate, "[w]aiting until the close of the fiscal year [i.e., until September 30] to prorate is inconsistent with providing rapid relief." Trade Adjustment Assistance for Farmers, 68 Fed. Reg. at 50,049. "The rule therefore seeks middle ground between the intent of the legislation, on the one hand, and the requirement to prorate payments, on the other, by creating a window for filing petitions." Id. (requiring petitions for certification to be submitted to FAS from August 15 through January 31;[20] petitions received after that date will be returned to sender); see also 7 C.F.R. § 1580.303(g) (stating that if FAS "determines in September that program funds may be insufficient to meet the requirements for [TAA] payments . . . during the coming fiscal year, FSA may delay making [TAA] payments in order to prorate amounts owed producers").

Therefore, the regulatory deadline is intended to help encourage producers to submit their information in a timely fashion and allow Agriculture to process payments before the end of the fiscal year. It should not be used to deny payments to a producer who acted in a timely fashion and provided notice that discrepancies existed, especially when Agriculture failed to fully investigate and withdrew any opportunity for an administrative appeal. Moreover, the Government's reliance on the September 30 deadline ignores Agriculture's own regulations, which evince an appreciation of the statute's remedial purpose. For example, 7 C.F.R. § 1580.501(d) states, "[t]he Administrator may authorize the FSA county committees to waive or modify non-statutory application deadlines or other program requirements in cases where lateness or failure to meet such other requirements by

---

[20] The Texas Shrimp Association filed its petition for certification of TAA eligibility on behalf of Texas shrimp producers on October 21, 2003, within the required filing window.

applicants does not adversely affect the operation of the program." Yet, even given this, and knowing that Trinh had marginal and disputed ineligibility, that a change in the appeals process likely impacted the evaluation of Trinh's September 15 letter, and that the Department's lack of contact hindered Trinh from submitting additional information showing a decline in net income, the Government simply states "Trinh has never submitted documentation demonstrating a decline in income to USDA. However, as a member of the certified producer group, he was eligible for and received technical assistance at no cost to himself." Def.'s Resp. Br. at 10.

The Government does not acknowledge that the lack of complete evidence to support Trinh's claims is partly due to the Government's failure to inform Trinh regarding the process. As a pro se applicant, if he did not know additional information could be submitted (if it could be) after the NAD appeal was mooted, and he was told an adverse decision was withdrawn, why would Trinh file an amended tax return or any other information? What end would it serve? Interestingly, however, after FAS's final determination, dated November 23, 2004, which did explain that he could seek review before the court, Trinh filed an amended tax return on December 6, 2004. It is uncertain when Trinh actually received the November 23 letter, but, at most, thirteen days passed between FAS's letter and his amended tax return filing. Thus, while it is unclear when Trinh discovered the additional boat repair receipts, it is possible he was aware of them by the time he wrote the timely September 15 letter. If so, had Agriculture provided clear directives, he may have been able to supplement the record before the regulatory deadline. At the very least, it is possible that he could have supplemented the record in a timely fashion had Agriculture informed him about the true state of his claim and what was lacking in his evidence submissions.

**II.      Remand Is Justified**

Judicial review of an administrative action is based upon the administrative record before it. See 28 U.S.C. § 2640(c). The Secretary's conclusions are conclusive, if they are supported by substantial evidence; if not "the court, for good cause shown, may remand the case to such Secretary to take further evidence." 19 U.S.C. § 2395(b); see also Former Employees of Oxford Auto., Slip Op. 03-129 at 2–3. "Good cause [to remand] exists if the Secretary's chosen methodology is so marred that his finding is arbitrary or of such a nature that it could not be based on substantial evidence." Former Employees of Galey & Lord Indus., 219 F. Supp. 2d at 1286 (quotations omitted) (alteration in original).

Agriculture did not conduct its investigation with the utmost regard for Trinh's interest. The Government's brief, in fact, simply ignores the entire aborted NAD appellate process and the confusing messages sent to Trinh, skipping directly from Trinh's letter dated August 14, 2004, requesting an appeal of the initial Matagorda County FSA's determination, to the final determination issued by FAS on November 23, 2004, denying his eligibility for TAA benefits.

TAA benefits are part of remedial legislation, and should be construed broadly for the benefit of the worker. In considering each application, an agency must "provide a reasoned analysis and substantial evidence to support any determination." Former Employees of Pittsburgh Logistics Sys., Slip Op. 03-21 at 12. Because Agriculture has failed to do so here, its investigatory conclusion is not entitled to deference. See id. at 10 ("An inadequate investigation is not entitled to deference."); see also Former Employees of Hawkins Oil & Gas, Inc. v. United States Sec'y of Labor, 17 CIT 126, 130, 814 F. Supp. 1111, 1115 (1993) (declaring that "no deference is due to determinations based

on inadequate investigations") (citations omitted). "The developed record must evince substantial evidence to confirm or refute relevant issues encountered during the course of the investigation, and if an investigation does not pass a threshold of reasonable inquiry, the record is unsupported by substantial evidence." Former Employees of Pittsburgh Logistics Sys., Slip Op. 03-21 at 7.

## CONCLUSION

For the foregoing reasons, this matter is REMANDED to the Department of Agriculture to reconsider Trinh's eligibility for TAA benefits. On remand, the Secretary must reopen the record and consider Trinh's amended tax return as well as any other evidence of reduction in income that Trinh might submit. Furthermore, the Secretary's investigation must be conducted with the utmost respect for Trinh's interests, and must meet the reasonable inquiry threshold. Remand results shall be reported by October 3, 2005. Objections thereto are due by October 17, 2005. Rebuttal comments are due by October 31, 2005.

SO ORDERED.

                                             /s/ Jane A. Restani
                                                Jane A. Restani
                                                Chief Judge

Dated: New York, New York
        This 29th day of August, 2005