Slip Op. 06-29

# UNITED STATES COURT OF INTERNATIONAL TRADE

_____

|  |  |  |
|---|---|---|
| THAN VIET DO AND BINH THI NGUYEN, | : | |
| | : | Before: Chief Judge Restani |
| Plaintiffs, | : | |
| | : | |
| v. | : | Court No. 05-00062 |
| | : | |
| UNITED STATES SECRETARY OF AGRICULTURE, | : | |
| | : | |
| Defendant. | : | |

_____

[Plaintiffs' motion for judgment on the agency record as to eligibility for trade adjustment assistance DENIED.]

Dated: February 28, 2006

Hays, McConn, Rice & Pickering (John R. Walker) for the plaintiffs.

Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director; Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Delfa Castillo); Jeffrey Kahn, Office of the General Counsel, International Affairs & Commodity Programs Division, United States Department of Agriculture, of counsel, for the defendant.

## OPINION

Restani, Chief Judge: This matter is before the court on the motion for judgment on the agency record brought by Plaintiffs Than Viet Do and Binh Thi Nguyen pursuant to USCIT R. 56.1. Plaintiffs contest the United States Secretary of Agriculture's ("Agriculture") determination denying their application for trade adjustment assistance ("TAA").

Agriculture denied Plaintiffs' application for TAA because their net fishing income did not decline from 2001 to 2002. Specifically, Plaintiffs' fishing business lost less money in 2002 than it did in 2001. Plaintiffs do not contend that their net fishing income, as defined by

Agriculture, did not decline but instead argue that Agriculture should consider how the sale of one of Plaintiffs' vessels affected their net fishing income. Specifically, Plaintiffs argue that Agriculture erred in its determination for two reasons: 1) Agriculture should have treated each of their vessels as a producer entitled to TAA under 19 U.S.C. § 2401e (Supp. II 2002), and 2) Agriculture's definition of "net fishing income" is unreasonable. Plaintiffs ask the court to grant their motion for judgment on the agency record or, in the alternative, for "good cause" shown, to remand the determination to Agriculture for reconsideration of their TAA eligibility.

Agriculture argues that Plaintiffs' vessels are not considered producers for purposes of obtaining TAA and that it properly examined Plaintiffs' aggregate income from their two vessels as reflected on their Internal Revenue Service ("IRS") Tax Form 1040 ("1040"). Agriculture maintains that it reasonably defined net fishing income and properly applied its regulation. Agriculture argues that because Plaintiffs suffered a greater loss in 2001 than in 2002, their net fishing income did not decrease. The court agrees and denies Plaintiffs' motion for judgment on the agency record.

## FACTUAL & PROCEDURAL BACKGROUND

Than Viet Do ("Do") and his wife, Binh Thi Nguyen ("Nguyen"), own and operate a shrimping business in Palacios, Texas. Prior to 2002, Plaintiffs' shrimping business had two vessels, the Master Francis and the Master Jimmy. At the end of 2001, Plaintiffs sold the Master Francis because it was unprofitable.

On December 11, 2003, Plaintiffs responded to a notice by the Foreign Agriculture

Service ("FAS") certifying Texas shrimp producers as eligible for trade adjustment assistance,[1]

and filed an application for TAA with the Farm Service Agency ("FSA") office in Matagorda

County, Texas.[2]  Trade Adjustment Assistance for Individual Producers, Pls.' App. Tab 2

[hereinafter TAA Application].  Based on TAA requirements,[3] Plaintiffs submitted copies of

their 2001 and 2002 Individual Tax Returns.  Form 1040, U.S. Individual Income Tax Return,

2001, Pls.' App. Tab 1; Form 1040, U.S. Individual Income Tax Return, 2002, Pls.' App. Tab. 7.

Plaintiffs' 2001 tax return contained two Schedule Cs (Profit or Loss from Business), one for

each of their two ships.  Form 1040, U.S. Individual Income Tax Return, 2001, Pls.' App. Tab 1,

at 3–4.  The 2001 tax return listed an adjusted gross income of $49,228 and a business loss of

---

[1]On October 21, 2003, the Texas Shrimp Association petitioned the FAS for certification of TAA eligibility on behalf of Texas shrimp producers.  See Trade Adjustment Assistance for Farmers, 68 Fed. Reg. 65,239 (Dep't of Agric. Nov. 19, 2003).  On November 19, 2003, the FAS certified their eligibility for TAA, finding "that increased imports of farmed shrimp contributed importantly to a decline in the landed prices of shrimp in Texas by 27.8 percent during January 2002 through December 2002, when compared with the previous 5-year average."  Id.  To qualify for benefits under this certification, shrimp producers had to apply for benefits with their local FSA office by February 9, 2004.  Id.

[2]The record contains two TAA applications, Number 746 and 1785, both dated December 11, 2003.  Application Number 746 bears the name and signatures of both Do and Nguyen.  TAA Application, Pls.' App. Tab 2.  Application Number 1785 lists Do and Nguyen, but is signed only by Do.  Trade Adjustment Assistance for Individual Producers, Pls.' App. Tab 3.  It appears that the two applications were consolidated.  The applications did not list Plaintiffs' boats.

[3]The TAA application requires that applicants submit verifiable documentation of: 1) the production of the commodity and the amount produced; 2) a decline in net fishing income from the latest year in which no TAA payment was received; 3) technical assistance received from the Cooperative State Research, Education, and Extension Service of the United States Department of Agriculture; and if requested, 4) Adjusted Gross Income in accordance with other USDA regulations.  See TAA Application, Pls.' App. Tab 2.  Plaintiffs satisfied the TAA requirement of technical assistance by receiving training on January 27, 2004.  Trade Adjustment Assistance, Technical Assistance Certification Form, Pls.' App. Tab 8, Tab 9.

$77,504.  Id. at 1.  Of this loss, $44,534 stemmed from the Master Francis and $32,970 stemmed from the Master Jimmy.  Id. at 2-3.  Furthermore, the 2001 tax return listed $126,405 from "[o]ther gains or losses."  Id. at 1.  Although the record does not conclusively establish the source of this item, it is noted that Plaintiffs sold the Master Francis in late 2001.

Plaintiffs' 2002 tax return contained one Schedule C for the Master Jimmy and none for the Master Francis.  The 2002 tax return also listed an adjusted gross income of negative $47,849 and a business loss of $48,137.  Form 1040, U.S. Individual Income Tax Return, 2002, Pls.' App. Tab. 7.  The business loss was attributed entirely to the Master Jimmy.  Id. at 3.  The record shows that Agriculture denied Plaintiffs' claim after examining their 1040s and comparing their $77,504 business loss in 2001 with their $48,137 business loss in 2002.  Form 1040, U.S. Individual Income Tax Return, 2001, Pls.' App. Tab 1; Form 1040, U.S. Individual Income Tax Return, 2002, Pls.' App. Tab. 7.

On August 14, 2004, Plaintiffs wrote a letter to the National Appeals Division ("NAD") "asking for an appeal because [they were] denied . . . TAA payment."  Letter from Than Viet Do to Office of the Area Supervisor, Nat'l Appeals Div., W. Reg'l Office (Aug. 14, 2004), Pls.' App. Tab 17.  On November 1, 2004, Plaintiffs received a letter from NAD stating that the Texas FSA was withdrawing the adverse decision in their case and that Plaintiffs' appeal was moot.  Letter from Patricia Leslie, Assistant Dir., Office of the Sec'y, Nat'l Appeals Div., U.S. Dep't of Agric., to Than Viet Do and Binh T. Nguyen (Nov. 1, 2004), Pls.' App. Tab 20.  The letter further advised Plaintiffs that the NAD appeal would be dismissed unless a letter was received from them within five days explaining why the appeal should not be dismissed.  Id.

On November 23, 2004, Plaintiffs received notification from the FSA that it had referred

the appeal to the FAS who made a final determination that Plaintiffs were ineligible for TAA

payment.  Letter from Ronald Lord, Deputy Dir., Imp. Policies & Programs Divs., Foreign Agric.

Serv., & Grady Bilberry, Dir., Price Support Div., Farm Serv. Agency, U.S. Dep't of Agric., to

Than Viet Do and Binh T. Nguyen (Nov. 23, 2004), Pls.' App. Tab 21.  The letter stated that the

"application was disapproved because [Plaintiffs'] net fishing income for 2002 did not decline

from 2001."  Id.  The letter also informed Plaintiffs that they could appeal the determination by

contacting the United States Court of International Trade within 60 days.  Id.  Plaintiffs filed a

timely appeal of the final determination.

## JURISDICTION & STANDARD OF REVIEW

The court has jurisdiction pursuant to 19 U.S.C. § 2395(c) (2000).  In reviewing a

challenge to Agriculture's determinations regarding eligibility for trade adjustment assistance, the

court will uphold the determination "if the factual findings are supported by substantial evidence

on the record and its legal determinations are otherwise in accordance with the law."  Trinh v.

U.S. Sec'y of Agric., 395 F. Supp. 2d 1259, 1265 (CIT 2005).  Substantial evidence is "more

than a 'mere scintilla,' but sufficient evidence to reasonably support a conclusion."  Former

Employees of Shaw Pipe, Inc. v. United States Sec'y of Labor, 21 CIT 1282, 1284–85, 988 F.

Supp. 588, 590 (1997) (citation omitted).

## DISCUSSION

In the present case, the only issue is whether Plaintiffs satisfied the requirements of 19

U.S.C. § 2401e(a)(1)(C) and 7 C.F.R. § 1580.301(e)(4) (2005).  In pertinent part, 19 U.S.C.

§ 2401e(a)(1)(C) requires that "[t]he producer's net farm income (as determined by the

Secretary) for the most recent year is less than the producer's net farm income for the latest year

in which no adjustment assistance was received by the producer under this part." Id. Agriculture implemented this provision through 7 C.F.R. § 1580.301(e)(4), which requires "[c]ertification that net farm or fishing income was less than that during the producer's pre-adjustment year." Id.

Here, Plaintiffs argue that 1) a vessel is entitled to TAA under Agriculture's own regulations, and 2) Agriculture has unreasonably defined "net fishing income."

## I.        A vessel is not entitled to TAA

First, the court addresses whether a vessel is entitled to cash benefits under the TAA statutes and regulations. 19 U.S.C. § 2401e(a)(1) provides that a "[p]ayment of a trade adjustment allowance shall be made to an adversely affected agricultural commodity producer," but does not specifically define "producer." Id. (emphasis added). Rather, Agriculture defined producer as "a person who is either an owner, operator, landlord, tenant, or sharecropper, who shares in the risk of producing a crop and who is entitled to share in the crop available for marketing from the farm, or a qualified fisherman." 7 C.F.R. § 1580.102 (emphasis added).

In this case, Agriculture did not interpret its definition of producer to encompass vessels. Plaintiffs, however, argue that a vessel is a producer under Agriculture's own regulations because it is a qualified fisherman. A qualified fisherman is "a person whose catch competes in the marketplace with like or directly competitive aquaculture products and report net fishing income to the Internal Revenue Service on Schedules C or C-EZ (Form 1040)."[4] 7 C.F.R. § 1580.102

---

[4]Agriculture further defined person as "an individual, partnership, joint stock owner, corporation, association, trust, estate, or any other legal entity as defined in 7 C.F.R. 1400.3." 7 C.F.R. § 1580.102.

7 C.F.R. § 1400.3 provides in relevant part that:

(emphasis added).   Therefore, there are two requirements for a vessel to be considered a

qualified fisherman: first, the vessel must be considered a person, and second, the vessel must

have a catch that competes in the marketplace and must report income to the IRS.  Id.

Plaintiffs claim that a vessel is "'a person' in the eyes of the law" by resorting to

admiralty law dealing with in rem procedure.  Pls.' Br. 15.  Plaintiffs argue that a vessel is a

person because it may be sued as a "wrongdoer" for the purposes of in rem jurisdiction.

Plaintiffs then argue that because a vessel owns its catch, it is a qualified fisherman and

therefore, a producer entitled to a TAA claim.  Thus, Plaintiffs contend that they should receive

TAA for the Master Jimmy because the net fishing income for Master Jimmy was less in 2002

than it was in 2001.[5]  The court concludes that a vessel is not a person and thus not a producer for

(1)     A person is:
    (i)     An individual, including any individual participating in a farming operation as a partner in a general partnership, a participant in a joint venture, or a participant in a similar entity;
    (ii)    A corporation, joint stock company, association, limited partnership, limited liability partnership, limited liability company, irrevocable trust, revocable trust combined with the grantor of the trust, estate, or charitable organization, including any such entity or organization participating in the farming operation as a partner in a general partnership, a participant in a joint venture, a grantor of a revocable trust, or as a participant in a similar entity . . .
(2)     In order for an individual or entity, other than an individual or entity that is a member of a joint operation, to be considered a separate person for the purposes of this part, in addition to other provisions of this part, the individual or entity must:
    (i)     Have a separate and distinct interest in the land or the crop involved;
    (ii)    Exercise separate responsibility for such interest; and
    (iii)   Maintain funds or accounts separate from that of any other individual or entity for such interest.

[5]As indicated, in 2001, the net income from the Master Jimmy was negative $32,970, while its net income in 2002 was negative $48,137.  Form 1040, U.S. Individual Income Tax

the purposes of TAA.[6]

In reviewing Agriculture's determination, the court is mindful that "[a]n agency's interpretation of its own regulations is normally entitled to considerable deference." Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1561 (Fed. Cir. 1996) (quoting Perry v. Martin Marietta Corp., 47 F.3d 1134, 1137 (Fed. Cir. 1995) (citation omitted)). That interpretation is "ordinarily accepted 'unless it is plainly erroneous or inconsistent with the regulation.'" Id. at 1561 (quoting Honeywell Inc. v. United States, 661 F.2d 182, 186 (Ct. Cl. 1981)).

Here, it is not erroneous or inconsistent for Agriculture to interpret "qualified fisherman" as excluding vessels, because a vessel is not a "person" for purposes of TAA. The treatment of a vessel as a fictitious person in admiralty law does not establish that it may be compensated with TAA as a real person. First, there is no indication that Congress intended to apply admiralty law to TAA claims or that Congress intended to benefit vessels, rather than fishermen, with TAA. See 19 U.S.C. § 2401; H.R. Rep. No. 107-624 (2002) (Conf. Rep.); H. R. Rep. No. 107-290 (2001); S. Rep. No. 107-126 (2001). The final statute and the Congressional debates do not mention the applicability of admiralty law or the possibility that vessels may be beneficiaries of

---

Return, 2001, Pls.' App. Tab 1; Form 1040, U.S. Individual Income Tax Return, 2002, Pls.' App. Tab. 7.

[6]Agriculture argues that the court should not consider whether a vessel is a person or producer because Do listed himself and his wife, not their vessels, as the producers. Although the record reflects that Plaintiffs did not list their boats as the producers, the record does reflect the fact that Plaintiffs operated two separate fishing vessels. Thus, if a vessel is a person and a producer for purposes of TAA, then Agriculture should not allow a minor mistake in filing procedures to prevent it from fulfilling the remedial nature of trade adjustment assistance and properly awarding benefits. See 19 U.S.C. § 2401e(a)(1)(C). Accordingly,the form of the Plaintiffs' claim does not prevent the court from considering Plaintiffs' argument that a vessel is a producer.

TAA. See 19 U.S.C. § 2401; 148 Cong. Rec. S3530, 3536 (2002); 147 Cong. Rec. E2156, 2157 (2001). Instead, members of Congress mentioned real persons – farmers, ranchers, and fishermen – as the beneficiaries of TAA, not fictional legal entities used exclusively in admiralty law. See 148 Cong. Rec. S3530, 3536 (statement of Sen. Wellstone) (referring to the beneficiaries of TAA as "family farmers, ranchers and independent fishermen"); 147 Cong. Rec. E2156, 2157 (statement of Rep. Bentsen) (also referring to the beneficiaries of TAA as "family farmers, ranchers and independent fishermen"). Moreover, if a vessel is considered a qualified fisherman and a producer, then a TAA applicant could successfully make as many TAA claims as he has vessels. This conflicts with the legislative intent to limit cash benefits to $10,000 per farmer or fisherman. See 19 U.S.C. § 2401e(c) ("The maximum amount of cash benefits . . . shall not exceed $10,000."); 145 Cong. Rec. S13657, 13667 (1999) (statement of Sen. Conrad) (TAA was "limited to $10,000 per farmer per year) (emphasis added); 145 Cong. Rec. S 13657, 13668–69 (statement of Sen. Murkowski) ("The cash benefits would be capped at $10,000 per fisherman.") (emphasis added). Thus, there is no indication that the legislature intended to rely upon admiralty law to treat a vessel as a person or producer and thereby allow fishermen to have multiple TAA claims.

Second, the proposition that a vessel is a person is a legal fiction that is particular to admiralty law and is not generally applicable in other contexts.[7] See Homer Ramsdell Transp. Co. v. LA Compagnie Generale Transatlantique, 182 U.S. 406, 414 (1901) (stating that the

---

[7]Plaintiffs analogize the vessel to another fictional legal entity, a corporation, because it incurs legal obligations. Plaintiffs, however, do not demonstrate that a vessel is recognized as a legal entity outside admiralty and maritime law, as a corporation is.

concept that a vessel is considered the wrongdoer is "a distinct principle of the maritime law")

(citing Ralli v. Troop, 157 U.S. 386, 402 (1895)). Courts created this legal fiction to allow an

injured party to "proceed in rem directly against the vessel." Ventura Packers, Inc. v. F/V

Jeanine Kathleen (In re Her Tackle), 424 F.3d 852, 858 (9th Cir. 2005) (quoting Chugach Timber

Corp. v. N. Stevedoring & Handling Corp. (In re Chugach Forest Prod., Inc.), 23 F.3d 241, 245

(9th Cir. 1994)). In doing so, courts were affording security to an injured person in the event of a

successful judgment. See Baker v. Raymond Int'l, Inc., 656 F.2d 173, 183 (5th Cir. 1981)

(stating that an injured party "was not confined to exploring the potentially empty purse of the

charterer but could secure redress by affixing a lien to the vessel"); see also Cargill B.V. v. S/S

"Ocean Traveller," 726 F. Supp. 56, 61 (S.D.N.Y. 1989) (stating that the legal fiction of a

vessel's liability saves the injured party from having to "circle the globe in efforts to sue and

collect from the owner"). The reason for using this legal fiction in admiralty cases is simply not

applicable in the context of TAA, where a fishing vessel owner is obtaining a benefit rather than

incurring a legal obligation.[8]

   In sum, a vessel is not a person and thus, not a producer for purposes of TAA. Therefore,

Agriculture's treatment of vessel owners, not vessels, as producers is not plainly erroneous or

inconsistent with its regulations.[9] Accordingly, Plaintiffs do not have separate TAA claims for

---

[8]Plaintiffs also fail to address how a vessel satisfies the definition of personhood stated in 7 C.F.R. § 1400.3, requiring that a person must: "(i) [h]ave a separate and distinct interest in the land or the crop involved, (ii) [e]xercise separate responsibility for such interest; and (iii) [m]aintain funds or accounts separate from that of any other individual or entity for such interest." 7 C.F.R. § 1400.3.

[9]Additionally, as Defendant suggests in its brief, a vessel may be better described as equipment. "Equipment is the machinery and implements needed by the farming operation to

each of their vessels and Agriculture correctly used the aggregate income from their vessels to determine their net fishing income.

## II.     Agriculture reasonably defined "net fishing income"

Plaintiffs also challenge Agriculture's definition of "net fishing income" as unreasonable for failing to take into account the sale of a fishing vessel.  Here, Agriculture was specifically granted the authority to define net fishing income.  19 U.S.C. § 2401e(a)(1)(C) ("The producer's net farm income (as determined by the Secretary) . . . .") (emphasis added).  Agriculture, in turn, defined net fishing income as "net profit or loss, excluding payments under this part, reported to the IRS for the tax year that most closely corresponds with the marketing year under consideration."  7 C.F.R. § 1580.102.

In calculating net profit or loss, Agriculture excluded the gains or losses from the sale of business assets.  Agriculture examined Line 12 of Plaintiffs' 1040 from year 2001 and 2002 to determine that Plaintiffs' net fishing income had not declined.  See Form 1040, U.S. Individual Income Tax Return, 2001, Pls.' App. Tab 1; Form 1040, U.S. Individual Income Tax Return, 2002, Pls.' App. Tab. 7.  Line 12 of the 1040, titled "[b]usiness income or (loss)," is derived from Line 31, titled "[n]et profit or (loss)," on the Schedule C, which does not include the sale of business assets in its calculation of net profit or loss.  See  Form 1040, U.S. Individual Income Tax Return;  Form 1040, U.S. Individual Income Tax Return, Schedule C.

Plaintiffs contend that Agriculture should include the sale of their vessel in its calculation of their net fishing income.  Plaintiffs argue that Agriculture should derive net fishing income

---

conduct activities of the farming operation . . . ."  7 C.F.R. § 1400.3.  Here, a fisherman uses a vessel in order to conduct business.

from their 1040's adjusted gross income, which includes income from the sale of business assets.

Plaintiffs argue that the sale of their fishing vessel should be included in net fishing income

because their entire income stems from fishing. Plaintiffs' adjusted gross income in 2001

includes income from "[o]ther gains or (losses)" in the amount of $126,405.[10] Form 1040, U.S.

Individual Income Tax Return, 2001, Pls.' App. Tab 1. Plaintiffs' adjusted gross income also

decreased from $49,228 in 2001[11] to negative $47,849 in 2002, ostensibly because the sale

proceeds of the Master Francis was accounted for in 2001. Form 1040, U.S. Individual Income

Tax Return, 2001, Pls.' App. Tab 1; Form 1040, U.S. Individual Income Tax Return, 2002, Pls.'

App. Tab. 7. Essentially, Plaintiffs argue that Agriculture unreasonably defined net fishing

income because net profit or loss from fishing should include the gains or losses from the sale of

business assets. The court disagrees.

In determining whether an agency properly interpreted and applied a statute, courts

undertake a two-step analysis prescribed by Chevron U.S.A. Inc. v. Natural Res. Def. Council

Inc., 467 U.S. 837 (1984). The first step examines whether Congress has spoken directly on the

issue by examining the text of the statute, the canons of statutory construction, and the legislative

history. Id. at 842. If the statute is silent or ambiguous as to the issue, the court examines

whether the agency's interpretation is permissible. Id. at 843. If the agency has acted reasonably

---

[10] Plaintiffs do not explain, nor do they provide evidence of, the source of this amount; however, the source is likely from the sale of the Master Francis because they claim that their entire income came from fishing and furthermore, that they sold their vessel in 2001.

[11] Plaintiffs' adjusted gross income in 2001 is the sum of positive $126,405, positive $327 from interest payments, and negative $77,504 in business losses. Form 1040, U.S. Individual Income Tax Return, 2001, Pls.' App. Tab 1.

and rationally, the court may not substitute its own judgment for the agency's. Steen v. United States, 395 F. Supp. 2d 1345, 1349 (CIT 2005) (citing Koyo Seiko Co. v. United States, 36 F.3d 1565, 1570 (Fed. Cir. 1994)).

Here, Agriculture's definition of "net fishing income" is reasonable. In general, net income is the "[t]otal income from all sources minus deductions, exemptions, and other tax reductions." Black's Law Dictionary 767 (7th ed. 1999). Congress, however, has specifically limited "net income" to net income from fishing. See 19 U.S.C. § 2401e(a)(1)(c). It is reasonable for Agriculture to interpret Congress' "fishing" restriction as including only the net profit or loss from operating a fishing business and excluding income from the sale of a business asset. If Agriculture included the sale of business assets within the definition of net fishing income, then TAA may be given to producers whose income decreased because the sale of business assets inflated their income in one year and the lack of such sales decreased income in the next year, and not because the producers were adversely affected by trade. Thus, it was reasonable for Agriculture to define net fishing income as net profit or loss excluding the gain or loss from the sale of business assets. The court has also implicitly approved Agriculture's definition of net fishing income as net profit or loss as reported to the IRS on a Schedule C. See Rood v. U.S. Sec'y of Agric., Slip Op. 05-112, 2005 Ct. Int'l Trade LEXIS 120, *5 (CIT Aug. 29, 2005) (examining "fishing business loss" from applicant's Schedule C to determine if net fishing income had declined) (emphasis added). Thus, the court upholds Agriculture's definition of net fishing income as a reasonable interpretation of the statute.

Furthermore, Agriculture correctly used information deduced from Plaintiffs' Schedule Cs to determine their net fishing income. Contrary to Plaintiffs' argument, Agriculture should

not have used adjusted gross income to determine net fishing income because adjusted gross income includes the sale of business assets in Line 14, titled "[o]ther gains or (losses)." Form 1040, U.S. Individual Income Tax Return. Thus, because net fishing income does not include income from the sale of a business asset, Agriculture conducted a reasonable inquiry and correctly compared Plaintiffs' net business income from their Schedule Cs to determine their net fishing income. Here, Plaintiffs' business losses decreased from 2001 to 2002. Therefore, there was no decline in net fishing income.

Accordingly, Agriculture's denial of Plaintiffs' TAA claim for failure to demonstrate a decline in net fishing income is supported by substantial evidence and is in accordance with the law.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for judgment on the agency record is denied and judgment will enter for Defendant pursuant to USCIT R. 56.2(b).

/s/   Jane A. Restani

Jane A. Restani
CHIEF JUDGE

Dated:  New York, New York
        This 28th day of February, 2006.