Slip Op. 07-2

UNITED STATES COURT OF INTERNATIONAL TRADE

DUS & DERRICK, INC.,                   :
                                       :
              Plaintiff,               :
                                       :
         v.                            : Before: Richard K. Eaton, Judge
                                       :
                                       : Court No. 05-00346
UNITED STATES SECRETARY               :
OF AGRICULTURE,                        :
                                       :
              Defendant.               :
                                       :

OPINION AND ORDER

[United States Department of Agriculture's final determination
denying plaintiff's application for trade adjustment assistance
remanded.]

Dated: January 8, 2007

*Steven D. Schwinn*, for plaintiff.

*Peter D. Keisler*, Assistant Attorney General; *David M. Cohen*,
Director, Commercial Litigation Branch, Civil Division, United
States Department of Justice; *Jeanne E. Davidson*, Deputy
Director, Commercial Litigation Branch, Civil Division, United
States Department of Justice (*Michael J. Dierberg*), for
defendant.

Eaton, Judge:  This matter is before the court on plaintiff
Dus & Derrick, Inc.'s ("plaintiff" or "Dus & Derrick") motion for
judgment upon the agency record pursuant to USCIT Rule 56.1(a).
By its motion, plaintiff challenges the decision of the Foreign
Agricultural Service of the United States Department of
Agriculture (the "Department") to deny its application under the

Trade Adjustment for Farmers program for trade adjustment assistance ("TAA") pursuant to 19 U.S.C. § 2401e (2002).[1]  *See* Letter from Ronald Lord, Deputy Director Import Policies and Program Division to Dus & Derrick, Inc. (Mar. 7, 2005) ("Negative Determination"), AR[2] at 55; *see generally* Pl.'s Mem. Supp. R. 56.1 Mot. J. Agency R. ("Pl.'s Mem.").  The Department concluded that because plaintiff's net fishing income for calendar year 2003 was not less than its net income for calendar year 2001,

---

[1]    As initially adopted, the TAA statute established a mechanism by which domestic workers, firms and communities affected adversely by an increase in imports like or directly competitive with the products they produced could apply to the United States Department of Labor for a cash payment or other benefits intended to compensate for economic harm caused by the increased imports.  *See* Trade Act of 1974, Pub. L. No. 93-618, §§ 221-250, 251-264, 271-274, 88 Stat. 1978, 2019-40 (1975).  The law was amended in 2002 to provide similar relief through the Department of Agriculture for agricultural or farm workers who were considered "commodity producers."  *See* Trade Act of 2002, Pub. L. No. 107-210, §§ 141-143, 116 Stat. 933, 946-53 (2002). By its regulations for this amended provision, the Department of Agriculture defined a "producer" as a "person who is either an owner, operator, landlord, tenant, or sharecropper, who shares in the risk of producing a crop and who is entitled to share in the crop available for marketing from the farm, or a qualified fisherman."  7 C.F.R. § 1580.102 (2005).  In other words, farmers and qualified fishermen are permitted to seek TAA benefits much like other claimants.  According to the regulations, however, in order to be a "qualified fisherman," the applicant must be a "person whose catch competes in the marketplace with like or directly competitive aquaculture products and report[s] net fishing income to the Internal Revenue Service."  *Id.*  These definitions would include Dus & Derrick.  In addition, the 2002 Act contained provisions found in 19 U.S.C. §§ 2401 *et seq.* and later 19 U.S.C. § 2395, which provides for judicial review of final determinations made by the Secretary of Agriculture.

[2]    Citations to "AR" refer to the Administrative Record submitted in this action.

plaintiff failed to "meet the net income[3] requirement, in accordance with [7 C.F.R. § 1580.401(e) (2005)]," and therefore was ineligible to receive benefits.  Negative Determination, AR at 55.[4]

Plaintiff asserts two arguments in support of its request for remand.  First, in plaintiff's view, the Department's regulations required a comparison of plaintiff's net income for 2002, not 2001, to that from 2003.  Second, plaintiff contends that by basing its denial solely on a comparison of the information contained in line 28 of plaintiff's submitted 2001

---

[3]     According to the Department's regulations, "net fishing income" is "net profit or loss, excluding payments under this part, reported to the Internal Revenue Service for the tax year that most closely corresponds with the marketing year under consideration."  7 C.F.R. § 1580.102.

[4]     The regulatory provision cited as the basis for the Department's denial of plaintiff's application provides:

> The amount of an adjustment assistance payment during a qualifying year shall be determined in the same manner as in the originating year, except that the average national price shall be determined by using the 5-marketing-year period used to determine the amount of cash benefits for the first certification.

7 C.F.R. § 1580.401(e).  This provision applies after the Department has determined that the producer qualifies for benefits based on its application under a re-certification, and all that remains is the amount of benefits to be awarded.  While it is unclear how the cited regulation provides a basis for the denial of plaintiff's application, it is clear from the record that the primary reason for the Department's determination was plaintiff's failure to demonstrate the required decrease in its net income.

and 2003 Form 1120 tax returns,[5] the Department unreasonably

determined that plaintiff's net fishing income for 2003, the

marketing year,[6] was not less than its net fishing income for

2001, the pre-adjustment year.[7]  *See* Pl.'s Mem. at 9, 11.

Jurisdiction lies with 19 U.S.C. § 2395(c).  For the following

reasons, the Department's Negative Determination is remanded.


BACKGROUND

Plaintiff is a family-owned shrimp fishing company that has

operated its business off the Texas Gulf Coast since the early

1970's.  Plaintiff owns its own shrimp boat and, in addition to

other business-related expenses, regularly incurred maintenance

costs including fuel, new equipment, repairs and labor associated

with the boat.  Plaintiff, for the most part, received a steady

income from its operations.  Its business benefitted from the

price of shrimp being determined primarily by domestic market

forces of supply and demand.  Beginning in 2001, however,

---

[5]     Plaintiff filed its tax returns on a calendar year basis.

[6]     "Marketing year means the marketing season or year as defined by National Agriculture Statistic Service (NASS), or a specific period as proposed by the petitioners and certified by the Administrator."  7 C.F.R. § 1580.102.  It appears that 2003 is the marketing year for the re-certification of shrimp producers for benefits.

[7]     "Pre-adjustment year means the tax year previous to that associated with the most recent marketing year in the initial producer petition."  7 C.F.R. § 1580.102.

increased shrimp imports caused the domestic price of shrimp to drop.  *See* Def.'s Resp. Pl.'s Mot. J. Agency R. ("Def.'s Resp.") at 4.  In October 2003, as a result of the steadily declining price of U.S. shrimp, the Texas Shrimp Association ("TSA") filed with the Department a petition on behalf of Texas shrimp producers (including Dus & Derrick) for TAA certification in accordance with 19 U.S.C. § 2401a and 7 C.F.R. § 1580.201.[8]  *See* Trade Adjustment Assistance for Farmers, 68 Fed. Reg. 60,078 (Dep't of Agric. Oct. 21, 2003) (notice).  On November 19, 2003, after conducting an investigation, the Department found that increased shrimp imports had contributed importantly "to a decline in the landed prices of shrimp in Texas by 27.8 percent during January 2002 through December 2002, when compared with the previous 5-year average," and granted the petition.  Trade Adjustment Assistance for Farmers, 68 Fed. Reg. 65,239 (Dep't of Agric. Nov. 19, 2003) (notice).[9]  The downward trend in domestic

_____

[8]     According to the statute, the petition for certification is to be filed by "a group of agricultural commodity producers or by their duly authorized representative." 19 U.S.C. § 2401a(a).  In addition, the regulation provides instructions as to the required contents of the petition.  *See* 7 C.F.R. § 1580.201(c).

[9]     Where a group of agricultural commodity producers or its authorized representative files a petition seeking a certification as eligible to apply for TAA benefits, the Department will make the certification if the petitioner establishes:

> (1) that the national average price for the
> (continued...)

shrimp prices continued and, on November 30, 2004, the Department, having found that "continued increases in imports of like or directly competitive products contributed importantly to a decline in the average landed price of shrimp in Texas by 33.7 percent during the 2003 marketing period (January-December 2003), compared to the 1997-2001 base period," re-certified the TSA and its member producers as eligible to apply for TAA benefits. Trade Adjustment Assistance for Farmers, 69 Fed. Reg. 69,582 (Dep't of Agric. Nov. 30, 2004) (notice).

In accordance with the statutory scheme, once the TSA received its certification, plaintiff (one of the agricultural commodity producers covered by the certification) became eligible to individually apply for a cash payment.  *See* 19 U.S.C. § 2401e(a).

---

[9](...continued)
> agricultural commodity, or a class of goods within the agricultural commodity, produced by the group for the most recent marketing year for which the national average price is available is less than 80 percent of the average of the national average price for such agricultural commodity, or such class of goods, for the 5 marketing years preceding the most recent marketing year; and

> (2) that increases in imports of articles like or directly competitive with the agricultural commodity, or class of goods within the agricultural commodity, produced by the group contributed importantly to the decline in price described in paragraph (1).

19 U.S.C. § 2401a(c).

Plaintiff did not file for benefits under the original certification but rather made its application upon re-certification on January 19, 2005.  *See* Application for TAA for Individual Producers for Dus & Derrick, Inc. ("Pl.'s Application"), AR at 1.  In its application, plaintiff certified that it was entitled to a cash payment in part because its net fishing income in calendar year 2003 (what the application refers to as the "crop year") was less than its net fishing income in calendar year 2002,[10] the year plaintiff understood to be the pre-adjustment year.  *See* Pl.'s Application, AR at 1 ("I reported on the applicable federal tax form that my net farm or net fishing income declined from the petition's pre-adjustment year."); *see also* 19 U.S.C. § 2401e(a)(1)(C); 7 C.F.R. § 1580.301(e)(4).

In support of its application, plaintiff submitted its Form 1120 corporate tax returns for calendar years 2001, 2002 and 2003.  On line 28 of each return, which is entitled "Taxable income before net operating loss deduction and special deductions," the following data is provided: (1) for 2001, a net loss of $17,750.00; (2) for 2002, a net loss of $16,003.00; and (3) for 2003, a net profit of $9,044.00.  *See* Pl.'s Mem. at Apps. C, D and E.  While standing on their own these tax forms indicate

---

[10]     The status of 2002 as the pre-adjustment year is one of the issues in this case.

that plaintiff's net income improved in each year, plaintiff states in its papers that it believed it would be given an opportunity to demonstrate this was not the case.

In addition, plaintiff understands the language of 7 C.F.R. § 1580.102 defining "net fishing income" to require the Department to at least review the tax returns in their entirety in order to understand fully the circumstances that led to the net figures.  *See* Pl.'s Mem. at 11–12.

The Department maintains, however, that such a review is not mandated by either the TAA statute or the regulations.  *See* Def.'s Resp. at 14 ("[N]either [the Department]'s regulations nor the TAA statute require [the Department] to engage in the sort of ad hoc analysis that Dus & Derrick suggests would have been more appropriate.").  Thus, without more, the Department compared plaintiff's net income figure on line 28 of its 2003 Form 1120 to that reported on line 28 of its 2001 return and, finding that the 2003 amount was not less than the 2001 number, denied plaintiff's application.  In doing so, the Department used 2003 as the "marketing year" and 2001 as the "pre-adjustment year."  *See id.* ("[I]n determining whether [plaintiff] qualified for benefits . . . , [the Department] compared [plaintiff's] net income as reported to the IRS for 2003 with its net income reported to the IRS for 2001.  This net income is reflected in line 28 . . . of [plaintiff's] Form 1120, which was circled by

[the Department].").

On May 6, 2005, plaintiff timely commenced the instant action asking that this matter be remanded to afford it the opportunity to explain its net income figures.  *See* Letter from Wanda F. Walls to Office of the Clerk of the Court (May, 6, 2005) ("Complaint Letter") at 1.  For the following reasons, the Department's denial of plaintiff's application is remanded.

STANDARD OF REVIEW

When reviewing a final determination by the Department, "[t]he findings of fact by the . . . [Department] . . . if supported by substantial evidence, shall be conclusive; but the court, for good cause shown, may remand the case to [the Department] to take further evidence, and [the Department] may thereupon make new or modified findings of fact and may modify [its] previous action . . . ."  19 U.S.C. § 2395(b); *see also Former Employees of Gateway Country Stores LLC v. Chao*, 30 CIT __, Slip Op. 06-32 at 7 (Mar. 3, 2006) (not published in the Federal Supplement).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Huaiyin Foreign Trade Corp. (30) v. United States*, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The existence of substantial evidence is determined "by considering the record as

a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'" *Id.* (quoting *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984)).

The court reviews whether the Department's determination is in accordance with law pursuant to "the default standard outlined in the Administrative Procedure Act."  *Former Employees of Elec. Data Sys. Corp. v. U.S. Sec'y of Labor*, 28 CIT __, 350 F. Supp. 2d 1282, 1286 (2004) (referencing 5 U.S.C. § 706); *see also Former Employees of Gateway Country Stores LLC*, 30 CIT at __, Slip Op. 06-32 at 9; *Former Employees of Rohm & Haas Co. v. Chao*, 27 CIT 116, 122, 246 F. Supp. 2d 1339, 1346 (2004); *Woodrum v. Donovan*, 5 CIT 191, 193, 564 F. Supp. 826, 828 (1983); *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 496–97 (2004).


DISCUSSION

I.   Plaintiff's Individual Agricultural Commodity Producer
     Application for TAA Cash Payments

     A.   Relevant Law

Receipt of TAA benefits by an individual agricultural commodity producer is the result of a two-step process.  Only the second step, the application of an individual commodity producer for TAA benefits, is at issue here.

After a group of producers is certified pursuant to 19 U.S.C. § 2401a, an individual commodity producer is entitled to

apply for a cash payment "within 90 days after the date on which

the [Department] makes a determination and issues a certification

of eligibility under section 2401b of this title."  19 U.S.C.

§ 2401e(a)(1).  It is the Department's responsibility to

determine whether the individual producer has satisfied the

statutory requirements to receive a cash payment.  *See id.*[11]

_____

[11]     The statutory criteria that must be met in order for an
individual producer to receive a cash payment are as follows:

>      (1) Requirements
>
>           Payment of a[n] adjustment assistance
>      under this part allowance shall be made to an
>      adversely affected agricultural commodity
>      producer covered by a certification under
>      this part who files an application for such
>      assistance within 90 days after the date on
>      which the Secretary makes a determination and
>      issues a certification of eligibility under
>      section 2401b of this title, if the following
>      conditions are met:
>
>           (A) The producer submits to the
>           Secretary sufficient information to
>           establish the amount of
>           agricultural commodity covered by
>           the application filed under this
>           subsection that was produced by the
>           producer in the most recent year.
>
>           (B) The producer certifies that the
>           producer has not received cash
>           benefits under any provision of
>           this subchapter other than this
>           part.
>
>           (C) The producer's net farm income
>           (as determined by the Secretary)
>           for the most recent year is less
>           than the producer's net farm income

(continued...)

Thus, once the group of producers has carried the burden of establishing that competitive imports have contributed importantly to a decline in the industry, an individual producer is entitled to a cash payment if it can establish, among other things, that its net income "for the most recent year is less than [its] net farm income for the latest year in which no

---

[11](...continued)
> for the latest year in which no adjustment assistance was received by the producer under this part.
>
> (D) The producer certifies that the producer has met with an Extension Service employee or agent to obtain, at no cost to the producer, information and technical assistance that will assist the producer in adjusting to import competition with respect to the adversely affected agricultural commodity, including ——
>
> > (i) information regarding the feasibiity and desirability of substituting 1 or more alternative commodities for the adversely affected commodity; and
> >
> > (ii) technical assistance that will improve the competitiveness of the production and marketing of the adversely affected agricultural commodity by the producer, including yield and marketing improvements.

19 U.S.C. § 2401e(a)(1); *see also* 7 C.F.R. § 1580.301.

adjustment assistance was received by the producer . . . ."  19

U.S.C. § 2401e(a)(1)(C).[12]  Here, the Department compared line 28

of plaintiff's Form 1120 for 2003 with the same line from 2001.

Plaintiff insists that in denying its application for a cash

payment, the Department (1) unreasonably interpreted its own

regulations by not using 2002 as the pre-adjustment year; and (2)

failed to fully examine plaintiff's tax returns and did not allow

it to explain the reasons for the apparent increase in its net

income from 2001 to 2002 and 2003.  Thus, the court's task is to

determine whether the law and the facts support the Department's

conclusion that plaintiff does not qualify for TAA benefits.


     B.    The Department's Interpretation of "Pre-Adjustment
           Year"

     Plaintiff's first contention is properly understood as a

---

[12]   In its regulations, the Department requires that along with submitting its application, a producer must also certify "that net farm or fishing income was less during the producer's pre-adjustment year" in order to receive benefits. 7 C.F.R. § 1580.301(e)(4).  To comply with this provision, the Department permits a producer to submit:

> (i) Supporting documentation from a certified public accountant or attorney,

> (ii) Relevant documentation and other supporting financial data, such as financial statements, balance sheets, and reports prepared for or provided to the Internal Revenue Service or another U.S. Government agency.

7 C.F.R. § 1580.301(e)(6).

challenge to the Department's interpretation of its regulation

defining "pre-adjustment year."[13]  *See* Pl.'s Reply Def.'s Resp.

Pl.'s Mot. J. Agency R. ("Pl.'s Reply") at 6.  Specifically,

plaintiff takes issue with the Department's understanding that

the phrase "initial producer petition" used in the regulation's

definition of pre-adjustment year refers to the initial group

petition.  For plaintiff:

> "Initial producer petition" here can only
> refer to the *individual producer's initial
> application for TAA benefits pursuant to 7
> C.F.R. § 1580.301*, not, as the defendant
> suggests, the group of producers['] petition
> for TAA pursuant to 7 C.F.R. § 1580.201.
>
> First, the plain language of the regulations
> supports this reading. . . . [T]he
> regulations define "pre-adjustment year" in
> terms of a singular "producer," not a "group
> of producers" or "authorized
> representatives."  Only a "producer"
> (singular) may apply for TAA benefits
> pursuant to 7 C.F.R. § 1580.301 — and only
> after a "group of producers" or "authorized
> representative" applies for certification
> pursuant to 7 C.F.R. § 1580.201 or
> recertification pursuant to 7 C.F.R.
> § 1580.401.  Under the regulations, a
> "producer" (singular) does not apply for
> certification pursuant to 7 C.F.R. § 1580.201
> or recertification pursuant to 7 C.F.R.
> § 1580.401.  Thus, "initial producer
> petition" must refer to *a producer's* initial
> application for TAA benefits pursuant to 7
> C.F.R. § 1580.301.

---

[13]    It is worth noting that plaintiff does "not argue that
the Department's regulations run contrary to the law."  Pl.'s
Mem. at 8.  Rather, plaintiff asserts that "the Department wholly
failed to apply its own regulations properly in this case."  *Id.*
at 9.

Pl.'s Reply at 6 (emphasis in original) (footnote omitted).  It is plaintiff's position, therefore, that the pre-adjustment year is to be determined by referencing the marketing year proposed by the individual commodity producer in its application for TAA benefits, not the year that the group of producers filed their petition for certification.  *See* 7 C.F.R. § 1580.102 (defining "pre-adjustment year").

Plaintiff provides support for its asserted definition of "pre-adjustment year" by explaining that the word "petition" used in the regulation does not preclude plaintiff's proffered interpretation.  *See* Pl.'s Reply at 7.  Plaintiff asserts that the interpretative weight attributable to the singular form of the word "producer" far outweighs that attached to the word "petition."  *See id.*  Thus, according to plaintiff:

> The use of the term "petition" in the definition of "pre-adjustment year" is undeniably confusing, but when read with its qualifier "producer" (singular) and within the larger context of the regulations as a whole, the plain language of the regulations only supports a reading that "initial producer petition" means *an individual producer's initial application for TAA benefits pursuant to 7 C.F.R. § 1580.301.*

*Id.* (emphasis in original).

Finally, plaintiff claims that the Department's interpretation of "pre-adjustment year" leads to the unintended comparison of net fishing income from non-consecutive years (here 2001 compared to 2003).  Plaintiff relies on the language of 19

U.S.C. § 2401e(a)(1)(C), which requires the producer to demonstrate that its net fishing income for "the most recent year" is less than "the producer's net [fishing] income for the latest year in which no adjustment assistance was received by the producer . . . ."  Reading the definition of pre-adjustment year to be the year before that in which an individual producer applies for TAA benefits, plaintiff contends, would ensure the comparison of consecutive years that is required by the statute. Thus, relying on both the statute and the regulations, plaintiff claims that the Department unreasonably compared plaintiff's net fishing income from non-consecutive years in denying its application.

The Department maintains that "2001 is the only year that could be the pre-adjustment year based upon the clear language of the applicable regulations."  Def.'s Resp. at 8.

> Plaintiff's contention that the pre-adjustment year is 2002 is directly contrary to the definition of "pre-adjustment year" pursuant to 7 C.F.R. § 1580.102.  Dus & Derrick appears to assume that "pre-adjustment" year means the year prior to the year in which an individual applicant received benefits.  This conflicts with [the Department]'s definition of pre-adjustment year as "the tax year previous to that associated with the most recent marketing year in the <u>initial producer petition</u>."  The definition refers to the "initial producer petition," which is the initial petition filed by the group of producers, in this case the [TSA], for certification for [TAA].  It does not refer to the individual producer's initial application for benefits.  The

>        applicable statute and regulations clearly
>        distinguish between the group's "petition" in
>        the first stage of the TAA process, and an
>        individual producer's "application" in the
>        second stage of the process.

*Id.* at 9 (emphasis in original) (citations omitted). Based on its interpretation, the Department contends that it properly used 2001 as the pre-adjustment year because, as the marketing year in the initial producer petition was 2002, the previous tax year is 2001.

While plaintiff can hardly be faulted for straining to make sense of the Department's regulations, the court finds that its efforts are unnecessary. This is because, at least in the context of a re-certification, the regulations are not a permissible interpretation of the statute.

When a court reviews an agency's construction of the statute which it administers, it uses the familiar two-step process set forth in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984). The first step is to determine "whether Congress has directly spoken to the precise question at issue." *Id.* at 842. If a plain reading of the statute clearly reveals the intent of Congress, "that is the end of the matter; for the court as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. As applied to the facts of this case, the court must determine whether Congress has directly addressed the issue of

what years are to be compared by the Department when determining whether an agricultural commodity producer has satisfied the net income requirement for the receipt of TAA benefits.  For the court, the language of 19 U.S.C. § 2401e(a)(1)(C) is clear in its instruction that consecutive years must be compared when determining whether a producer has satisfied the net income requirement.  In addition, the court finds that the statute requires that the second of the two years to be used for comparison must be the year prior to that in which the application is made.  Thus, it is unnecessary to address *Chevron*'s second step.

"In determining whether a particular regulation carries out the congressional mandate in a proper manner, [the court] look[s] to see whether the regulation harmonizes with the plain language of the statute, its origin, and its purpose."  *Nat'l Muffler Dealers Ass'n, Inc. v. United States*, 440 U.S. 472, 477 (1979). Congress provided that an individual producer is entitled to receive a cash payment only if it demonstrated, among other things, that its "net farm income (as determined by the Secretary) for the most recent year is less than [its] net farm income for the latest year in which no adjustment assistance was received by the producer . . . ."  19 U.S.C. § 2401e(a)(1)(C). In promulgating its regulatory scheme, however, the Department altered the phrase "most recent year" to read the "tax year that

most closely corresponds to the marketing year under

consideration."[14]  7 C.F.R. § 1580.102 (defining "net fishing

income" as "net profit or loss, excluding payments under this

part, reported to the Internal Revenue Service for the tax year

that most closely corresponds with the marketing year under

consideration."); *see also id.* (defining "marketing year" as "the

---

[14]    Prior to November 1, 2004, the Department's regulations required a producer to submit, along with its application, a certification that its net fishing income "for the most recent tax year" was less than that in the producer's pre-adjustment year.  7 C.F.R. § 1580.301(e)(4) (2004).  The regulatory scheme was based on a producer application made "with respect to the most recent marketing year for which national average prices [were] available."  Trade Adjustment Assistance for Farmers, 69 Fed. Reg. 63,317, 63,317 (Dep't of Agric. Nov. 1, 2004) (final rule; technical amendments).  As of November 1, 2004, however, the Department amended its regulations and replaced the reference to the "most recent tax year" in 7 C.F.R. § 1580.301(e)(4) with the phrase "tax year that most closely corresponds with the marketing year under consideration."  *Id.*  According to the Department:

> Because national average prices take months to be gathered and published by the Department, a producer's most recent tax year may follow the tax year that most closely corresponds with the marketing year being considered for TAA.  Therefore, to correct this deficiency, § 1580.301(e)(4) is amended to delete reference to "the most recent tax year".  Consequently producers are required to certify that net farm or fishing income during the tax year that most closely corresponds with the marketing year under consideration was less than that during the pre-adjustment tax year, in order to receive payments.

*Id.*  Thus, in order to facilitate a determination of the amount of the TAA benefit, the Department altered the statutorily mandated manner in which eligibility was determined.

marketing season or year as defined by National Agriculture Statistic Service (NASS), or a specific period as proposed by the petitioners and certified by the Administrator."). The Department further provided that the producer's net income from the marketing year would be compared to its income from, what the Department refers to as, the "pre-adjustment year" or "the tax year previous to that associated with the most recent marketing year in the *initial producer petition*." 7 C.F.R. § 1580.102 (emphasis added).

While this scheme may comply with the statute where an application is made following an initial certification, it violates the statute when applied to an application made upon re-certification. This is highlighted by the scenario presented here. Dus & Derrick made its application for TAA in 2005. In reviewing the company's application, the Department compared its net income over non-consecutive years, i.e., 2001 and 2003. The year 2001 was selected because it is the year immediately preceding the marketing year used in the initial producer petition. The marketing year chosen for comparison, however, was the marketing year used in the petition for re-certification, i.e., 2003. Under these facts, the Department's regulations would always result in a producer's net income for the marketing year being compared to 2001. As a result, if the TSA were to be re-certified in 2004 and a producer were to apply for benefits in

2005 claiming 2004 as the marketing year, the present definition of "pre-adjustment year," as interpreted by the Department, would result in a comparison of that producer's net income from 2004 to that from 2001.  This comparison is not in keeping with the language of the statute, which demands that a producer establish that its net fishing income for the most recent year (in the example 2004) is less than its net fishing income for the latest year in which no adjustment assistance was received by the producer (in the example 2003).[15]  *See* 19 U.S.C. § 2401e(a)(1)(C).  Thus, at least with respect to individual applications for benefits made pursuant to re-certifications, the court finds that the regulations are not a permissible interpretation of the statute, which clearly expresses Congress's intent that consecutive years be compared.

In addition, the court finds that the language of the statute did not invite the Department to devise an alternative definition for the phrase "most recent year."  For the court, that phrase can only refer to the year preceding that of the application.  The statutory phrase "is less than" clearly indicates that a comparison is to be made between two years.  Plaintiff was denied benefits based on a comparison between 2003 as the marketing year to 2001 as the pre-adjustment year.  A

---

[15]     The record indicates that Dus & Derrick has never applied for or received TAA benefits.

plain reading of the statute, however, demands that, for an application made in 2005, net income for 2004[16] (the "most recent year") must be compared to that earned in 2003 ("the latest year in which no adjustment assistance was received by the producer").

Therefore, the court concludes that because the intent of Congress manifested in 19 U.S.C. § 2401e(a)(1)(C) is clear, the Department's regulations in the context of a re-certification are an impermissible interpretation of the statute to the extent that they: (1) provide for the comparison of non-consecutive years when determining whether a producer has satisfied the statutory net income requirement; and (2) provide for a year other than the "most recent year" as the year selected for the comparison.

C.    The Department's Reliance Solely on Line 28 of
      Plaintiff's Tax Returns

The court next addresses the question of the steps the Department must take in rendering a final determination with respect to a producer's net income.  In plaintiff's view, the Department's denial of its application for TAA benefits was not supported by substantial evidence because the agency did nothing more than look at one line in plaintiff's tax returns when determining whether plaintiff had satisfied the net income

---

[16]    The court recognizes that a tax return for the preceding year may not be available when the application is made. Tax returns, however, are not the only means of determining net income.  *See* 7 C.F.R. § 1580.301(e)(6).

requirement for an award of TAA benefits.  The Department maintains that because "net income is reflected in line 28 . . . of Dus & Derrick's Form 1120," there was no need to look further into how those figures were calculated, or to consider any other evidence relating to net income.  Def.'s Resp. at 14. The Department does not dispute that it took no other action and, in fact, argues that no other action is required by law.  *See id.* at 14-15 ("Contrary to Dus & Derrick's suggestion, [the Department]'s regulation does not require a consideration of 'profit and loss information,' 'net income data,' or every line item that makes up Dus & Derrick's tax return.  The regulation requires only a comparison of net income.").

Plaintiff asserts that the statute requires the Department is to "determine" an individual commodity producer's net fishing income prior to granting or denying an individual application for a cash payment.  *See* 19 U.S.C. § 2401e(a)(1)(C).  According to plaintiff, the statutory language does not permit the agency to make a finding of net fishing income based on a review of a single line in a producer's tax return.  In fact, it is plaintiff's position that the Department's interpretation of 19 U.S.C. § 2401e(a)(1)(C) embodied in its definition of net fishing income under 7 C.F.R. § 1580.102 likewise prohibits the Department's current one-line-comparison method for determining net fishing income.  Specifically, plaintiff maintains that the

phrase "net profit or loss . . . reported to the Internal Revenue Service" included in the definition of "net fishing income" means that the Department must consider all of a producer's submitted tax information, including the various factors that went into calculating the reported numbers.  *See* Pl.'s Mem. at 13.  In plaintiff's view, the Department's failure to look beyond the one line in plaintiff's tax returns prevented it from considering that the deductions in 2001 and 2002 resulted from boat repairs that were financed from the company's savings and a private loan from one of the company's shareholders.  That is, plaintiff argues that the figures contained in line 28 of its 2001 and 2003 Form 1120 tax returns do not tell the whole story.

Plaintiff's position is best expressed in the Complaint Letter.

> 1) in the year 2001, which sets up the controls for future years, the business had cash in the bank of $17,000 which was used to pay outstanding expenses plus gross sales which created the large net losses which in turn created the false basis
>
> 2) in the year 2002, stockholder loaned to the corporation approximately $16,000 working capital to pay outstanding expenses, plus gross sales which created another year of losses, just not quite as much as 2001 (We were also denied pmts for this same reason for this year) (mechanical down/time reduced sales)
>
> 3) in the year 2003, there was no longer any money in the bank and there were no stockholder contributions to be made. The business had to be conducted entirely

> from gross sales and with no additional
> capital sources.  We could spend no more
> than we made.

Complaint Letter at 2.  Therefore, plaintiff claims that when determining a producer's net fishing income, the Department must consider the "many accounting variables which affect the net income/loss."  *Id.*  These facts and this argument are echoed in the brief filed on plaintiff's behalf by counsel.  *See* Pl.'s Mem. at 13.  Thus, according to plaintiff, the variance between the net income reported in line 28 of its tax returns should have triggered a more comprehensive review of the evidence by the Department in order to determine whether plaintiff was in a worse financial condition in 2003 than it was in 2001.  *See id.* at 15–16.

The Department contends that its regulations require nothing more than a comparison of the net income figures as reported to the Internal Revenue Service on plaintiff's tax returns.  *See* Def.'s Resp. at 14.  As the Department argues:

> The regulation requires only a comparison of
> net income.  Although there may be numerous
> revenue and expense line items that are used
> in calculating net income, net income is
> ultimately a number based upon that
> calculation.  Furthermore, although there may
> be a variety of ways of calculating net
> income, depending upon the rules being
> followed and accounting choices made by the
> company, [the Department] determined that the
> net income for purposes of TAA should be "net
> profit or loss, excluding payments under this
> part, reported to the Internal Revenue
> Service . . . ."  7 C.F.R. § 1580.102.

> Therefore, it was appropriate for [the
> Department] to compare Dus & Derrick's net
> income in 2003 with its net income in 2001
> based upon the net income that Dus & Derrick
> reported to the IRS in line 28 of its tax
> returns.

*Id.* at 14-15 (emphasis in original) (footnote omitted).

Support for plaintiff's position can be found in the decisions of this Court and the Court of Appeals for the Federal Circuit ("Federal Circuit").  Specifically, this Court has found that: when examining the documents submitted to it, the Department has a duty to make a "reasonable inquiry" into the impact of those documents on a producer's application for benefits, *see Van Trinh v. U.S. Sec'y of Agric.*, 29 CIT __, __, 395 F. Supp. 2d 1259, 1268 (2005) ("While the Department has considerable discretion in conducting its investigation of TAA claims, there exists a threshold requirement of reasonable inquiry.") (alterations, citations, emphasis and internal quotation marks omitted); *see also Anderson v. U.S. Sec'y of Argic.*, 30 CIT __, __, 429 F. Supp. 2d 1352, 1355 (2006) ("The Department of Agriculture's discretion in conducting its investigations of TAA claims is prefaced by the existence of a threshold requirement of reasonable inquiry.") (internal citations and quotation marks omitted); that it is appropriate to disregard certain income when determining net income, *see Than Viet Do & Binh Thi Nguyen v. U.S. Sec'y of Agric.*, 30 CIT __, __, 427 F. Supp. 2d 1224, 1231 (2006) ("Thus, it was reasonable for

Agriculture to define net fishing income as net profit or loss

excluding the gain or loss from the sale of business assets."); 

that some kinds of expenses may also be disregarded, *see*

*Selivanoff v. U.S. Sec'y of Agric.*, 30 CIT __,__, Slip Op. 06-55

at 8 (Apr. 18, 2006) (not published in the Federal Supplement)

(remanding the Department's denial of plaintiff's application to

determine whether "extraordinary" expenses had been reported as

net income); that the determination should take into account

different accounting methods, *see Anderson v. U.S. Sec'y of*

*Agric.*, 30 CIT __, __, Slip Op. 06-161 at 21 (Nov. 1, 2006)

(remanding the Department's denial of plaintiff's application and

instructing the agency to consider "the reasonableness of its

regulation as applied to [the plaintiff], in view of the

differences in cash versus accrual accounting"); *Anderson v. U.S.*

*Sec'y of Agric.*, 30 CIT __, Slip Op. 06-186 (Dec. 20, 2006) (not

published in the Federal Supplement); and that the Department

cannot simply compare one line of a producer's tax return when

determining net fishing income, *see Lady Kim T. Inc. v. U.S.*

*Sec'y of Agric.*, 30 CIT __,__, Slip Op. 06-183 at 14–15 (Dec. 15,

2006) (not published in the Federal Supplement) (remanding the

Department's denial of a producer's application for benefits with

instructions for the agency to explain the reasons behind its

negative determination).

     In addition, the Federal Circuit has indicated that the

Department's determination should include an examination of documents other than a producer's tax returns.  *See Steen v. United States*, 468 F.3d 1357, 1360-61, 1363 (Fed. Cir. 2006) (holding that "net farm income," when applied to a producer in the fishing industry, means net income from all fishing activity, not just that income from a particular commodity; and further providing that "the regulations make it reasonably clear that the determination of . . . net fishing income is not to be made solely on the basis of tax return information if other information is relevant to determining the producer's net income from all . . . fishing sources.").

Further support for this view is found in the Department's own regulations.  Under 7 C.F.R. § 1580.301(e)(6), a producer is allowed to support its claim that its net income has diminished by providing the Department with other documents besides its tax returns.  Specifically, a producer may submit balance sheets, financial statements or "documentation from a certified public accountant or attorney."  7 C.F.R. § 1580.301(e)(6).  Thus, the agency may not rely solely on the information contained in plaintiff's tax return when other information is available.

It is not clear what effect, if any, a more complete analysis of plaintiff's submitted net income data will have on the ultimate determination; however on remand, plaintiff shall be given an opportunity to submit information as provided in 7

C.F.R. § 1580.301(e)(6).  The Department is instructed to take that information into account when making its final determination and explain how, if at all, it affects that determination.

## CONCLUSION

Because the regulations at issue here govern situations other than those presented by the facts of this case, the court will not order their vacatur.  *See Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993).  Rather, on remand, the Department shall: (1) construct a methodology for considering a producer's application pursuant to a re-certification that comports with this opinion; (2) inform plaintiff of the methodology and give it an opportunity to place on the record any further documentation in accordance with 7 C.F.R. § 1580.301(e)(6); and (3) fully explain its methodology and reasons for reaching its final determination with respect to plaintiff's application.  Remand results are due May 8, 2007. Comments to the remand results are due June 7, 2007.  Replies to such comments are due June 19, 2007.

                                        /s/Richard K. Eaton
                                          Richard K. Eaton


Dated: January 8, 2007
       New York, New York