Slip Op. 08-59

UNITED STATES COURT OF INTERNATIONAL TRADE

```
_____
                                :
T.W.R., Inc.,                   :
                                :
              Plaintiff,        :
                                :
          v.                    :   Before: Richard K. Eaton, Judge
                                :
UNITED STATES                   :   Court No. 05-00356
SECRETARY OF AGRICULTURE,       :
                                :
              Defendant.        :
_____:
```

OPINION AND ORDER

[United States Department of Agriculture's final determination denying plaintiff's application for trade adjustment assistance remanded.]

Dated: May 28, 2008

*Steven D. Schwinn* and *Clayton P. Solomon*,[1] for plaintiff.

*Gregory G. Katsas*, Acting Assistant Attorney General; *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Michael J. Dierberg*), for defendant.

Eaton, Judge:  This matter is before the court on the motion of plaintiff T.W.R., Inc. for judgment upon the agency record pursuant to USCIT Rule 56.1.  By its motion, plaintiff challenges the final determination of the United States Department of Agriculture (the "Department") denying its application, pursuant to 19 U.S.C. § 2401e (2002), for cash benefits under the Trade Adjustment Assistance for Farmers ("TAA") program.  *See* Mem.

---

[1]  Appearing pursuant to a Law Student Appearance Form, authorized by USCIT Admin. Order No. 06-01, and consented to by the court on April 20, 2007.

Supp. Pl.'s Mot. J. Agency R. ("Pl.'s Br."); Reconsideration Upon Remand of the Application of T.W.R., Inc. (Dep't of Agric. Dec. 14, 2006) (the "Negative Determination").  Jurisdiction lies under 19 U.S.C. § 2395(c).

For the reasons set forth herein, the Department's Negative Determination is remanded.


BACKGROUND

Plaintiff is a family-owned shrimping company that has operated its business off the Texas Gulf Coast since the early 1970s.  Pl.'s Br. 2.  According to plaintiff, from as early as 1984, its business has suffered because of declining shrimp prices attributable to increased competition from imports.  Pl.'s Br. 3.

In October 2003, the Texas Shrimp Association ("TSA") filed a petition with the Department on behalf of Texas shrimp producers for TAA certification pursuant to 19 U.S.C. § 2401a and 7 C.F.R. § 1580.201 (2003).  *See* TAA for Farmers, 68 Fed. Reg. 60,078 (Dep't of Agric. Oct. 21, 2003) (notice).[2]  On November

_____

[2]  Obtaining TAA for Farmers cash benefits is a two-step process.  Under the first step, a group of agricultural commodity producers or their authorized representative files a petition seeking a certification making them eligible to apply for TAA benefits.  The Department, in turn, will grant the certification if the petitioning group establishes that certain criteria have been met.  *See* 19 U.S.C. § 2401a(c).  Under the second step, individual commodity producers can apply for cash benefits if
(continued...)

19, 2003, the Department certified Texas shrimp producers as eligible to apply for TAA cash benefits.  *See* TAA for Farmers, 68 Fed. Reg. 65,239 (Dep't of Agric. Nov. 19, 2003) (notice).  The certification was for a period of one year, with the possibility of additional time upon qualifying in subsequent years.  *See* 19 U.S.C. § 2401a(d).

On November 30, 2004, the Department re-certified the TAA petition for Texas shrimp producers, finding that average prices during the "2003 marketing period (January-December 2003)" were 33.7 percent less than the average for the five-year base period preceding the 2002 marketing year, i.e., 1997 through 2001.  *See* TAA for Farmers, 69 Fed. Reg. 69,582 (Dep't of Agric. Nov. 30, 2004) (notice).

In accordance with the statutory scheme, once the TSA received its certification, plaintiff, as a certified Texas shrimp producer, became eligible to apply for TAA cash benefits. *See* Pl.'s Br. 4; 19 U.S.C. § 2401e(a)(1).  Plaintiff did not apply for benefits under the original certification.  It did, however, apply on January 19, 2005 under the re-certification. *See* Application Dated Jan. 19, 2005 for TAA for Individual Producers, of T.W.R., Inc., Admin. R. ("AR") at 1; *see also* 7 C.F.R. § 1580.401(f) (stating that "[a]n eligible producer who

_____

(...continued)
they meet the requirements set forth in 19 U.S.C. § 2401e(a)(1).

did not apply for adjustment assistance in the initial year may apply [upon a re-certification]").

In support of its application, plaintiff submitted financial information to the Department, including its Form 1120 corporate tax returns for 2002 and 2001, along with their attached schedules and associated documents. *See* Def.'s Resp. Pl.'s Mot. J. Agency R. ("Def.'s Resp.") 4-5. Plaintiff filed its tax returns on a fiscal year,[3] rather than a calendar year basis. Consequently, plaintiff's 2001 tax return[4] was based upon a taxable year beginning October 1, 2001, and ending September 30, 2002, while plaintiff's 2002 tax return was based upon a taxable

---

[3]  A "fiscal year" is defined as "[a]n accounting period of 12 consecutive months . . . [and] is often different from the calendar year, [especially] for tax purposes." Black's Law Dictionary 1646 (8th ed. 1990).

[4]  Consistent with the Department's usage:

(1)  plaintiff's year "2000 tax return" corresponds with its fiscal year 2001, and covers the time period October 1, 2000 through September 30, 2001;

(2)  plaintiff's year "2001 tax return" corresponds with its fiscal year 2002, and covers the time period October 1, 2001 through September 30, 2002; and,

(3)  plaintiff's year "2002 tax return" corresponds with its fiscal year 2003, and covers the time period October 1, 2002 through September 30, 2003.

Plaintiff's year "2003 tax return" is not in the record, but the court presumes, given plaintiff's consistency through the years, that this return would cover the time period October 1, 2003 through September 30, 2004, i.e., plaintiff's fiscal year 2004.

year beginning October 1, 2002, and ending September 30, 2003.

Def.'s Resp. 4-5.

The Department denied plaintiff's application in a letter

dated March 7, 2005, stating in pertinent part:

> You have been denied a TAA cash benefit
> because you failed to meet the net income
> requirement, in accordance with 7 CFR Part
> 1580.401(e).  An applicant's net income
> for 2003 must be less than their net income
> for 2001.

Letter Dated Mar. 7, 2005 from Department to T.W.R., Inc., AR at

46.  Thus, the Department based its determination on a comparison

of plaintiff's net income in fiscal year 2003 and fiscal year

2001, and concluded that plaintiff's net income did not decline

between those periods.  *See* Pl.'s Br. 4-5.

Plaintiff sought judicial review of this determination by

filing a letter with the Court on May 6, 2005.  Letter Dated May

6, 2005 from T.W.R., Inc. to Clerk of the Court, USCIT

("Compl.").  The Clerk of the Court accepted plaintiff's letter,

pursuant to USCIT Rule 5(e), "as fulfilling in principle the

requirements of the summons and complaint . . . ."  Letter Dated

May 18, 2005 from Office of the Clerk, Donald C. Kaliebe, Case

Management Supervisor, to Ms. Pearlene Walls, at 1.  In the

letter, plaintiff's primary allegation was that the Department

improperly relied solely upon net income reported in its tax

returns to assess its net income.  Thus, in plaintiff's view, the

Department should have looked beyond its tax returns, and assessed all "accounting variables," which, if considered, would provide a more accurate representation of plaintiff's net income. *See* Compl. 2-3.

On May 10, 2006, the Department filed a motion for voluntary remand because plaintiff's "2000 tax return [covering the period October 1, 2000 through September 30, 2001], rather than its 2001 tax return [covering the period October 1, 2001 through September 30, 2002], represented the tax year previous to that associated with the most recent marketing year[5] in the initial producer petition." Def.'s Resp. 6. Thus, the Department stated that it had made its initial determination using incorrect tax periods. On June 2, 2006, the court granted the Department's motion. *See T.W.R., Inc. v. United States Sec'y of Agric.*, Court No. 05-00356 (June 2, 2006) (order).

On October 31, 2006, plaintiff provided the Department with its year 2000 tax return, along with "additional competent evidence" of its net income during the period covered by its 2000 return and thus its 2001 fiscal year, i.e., October 1, 2000 through September 30, 2001. *See* Letter Dated Oct. 31, 2006 from

---

[5] "Marketing year means the marketing season or year as defined by National Agriculture Statistic Service (NASS), or a specific period as proposed by the petitioners and certified by the Administrator," 7 C.F.R. § 1580.102, in this case January 2003 through December 2003. TAA for Farmers, 69 Fed. Reg. at 69,582.

T.W.R., Inc. to the Department ("Suppl. Letter"), Suppl. Admin.
R. ("SR") at 2.  The "additional competent evidence" consisted
of, among other things, balance sheets reflecting loans from
stockholders, invoices, and purchase orders.  In its
correspondence, plaintiff reiterated its position, asking the
Department to consider the "many factors" that affect its net
income in making its determination.  *See* Suppl. Letter, SR at 2.

On December 14, 2006, the Department denied plaintiff's
application, again reasoning that plaintiff was unable to
demonstrate the requisite decline in net fishing income.  *See*
Negative Determination at 1.  The Department stated:

> [T]he 2000 U.S. Corporation Income Tax Return
> corresponding to marketing year 2001, and the
> 2002 U.S. Corporation Income Tax Return
> corresponding to marketing year 2003, and
> other supporting documents provided by
> T.W.R., Inc., [demonstrate] that there was no
> decline in the net fishing income from the
> pre-adjustment year, 2001, to the most recent
> year for which marketing data was available,
> 2003.  The 2000 U.S. Corporation Income Tax
> Return for the period October 1, 2000, ending
> September 30, 2001, on line 30 shows taxable
> income (income less deductions) as a loss of
> . . . .  The 2002 U.S. Corporation Income Tax
> Return for the period October 1, 2002, ending
> September 30, 2003, on line 30 shows taxable
> income of . . . .  Based on these returns,
> the plaintiff was unable to demonstrate the
> required decline in its net fishing income.
>
> Even if the agency were to consider the other
> supplemental documentation submitted by
> T.W.R., Inc., it also does not support a
> decline in T.W.R., Inc.'s net fishing income.

Negative Determination at 1-2 (citations omitted).

Plaintiff then moved to remand this matter to the Department for further consideration. *See* Pl.'s Br. 21. Plaintiff argues that the Department's denial of cash benefits was flawed because the Department: (1) failed to review tax returns from consecutive years and (2) failed to look beyond net income as reported in plaintiff's tax returns.

STANDARD OF REVIEW

The Department's TAA eligibility determination should be upheld if its factual findings are supported by substantial evidence in the record and its legal determinations are in accordance with law. *See* 19 U.S.C. § 2395(b); *Truong v. United States Sec'y of Agric.*, 31 CIT __, __, 484 F. Supp. 2d 1324, 1326 (2007)(citations omitted); *Van Trinh v. United States Sec'y of Agric.*, 29 CIT 1058, 1063, 395 F. Supp. 2d 1259, 1265 (2005). Substantial evidence is "more than a 'mere scintilla,' but sufficient evidence to reasonably support a conclusion." *Viet Do v. United States Sec'y of Agric.*, 30 CIT __, __, 427 F. Supp. 2d 1224, 1227 (2006) (citations omitted). The scope of review of the Department's actions is limited to the administrative record. *Defenders of Wildlife v. Hogarth*, 25 CIT 1309, 1315, 177 F. Supp. 2d 1336, 1342-43 (2001). For "good cause shown," the court may remand a case to the Department to take further evidence and make

new and modified findings.  *See* 19 U.S.C. § 2395(b).


DISCUSSION

I.   Plaintiff's Application for TAA Cash Benefits

    A. Relevant Law

    As noted, an individual agricultural commodity producer's receipt of TAA benefits is the result of a two-step process, only the second of which is at issue here.  Under the second step, following group certification under 19 U.S.C. § 2401b, an individual producer can apply for cash benefits[6] "within 90 days after the date on which the [Department] makes a determination

---

[6]   Under 19 U.S.C. § 2401e(a)(1), the statutory requirements for an individual producer to receive benefits are as follows:

> (A) The producer submits to the Secretary sufficient information to establish the amount of agricultural commodity covered by the application filed under this subsection that was produced by the producer in the most recent year.
>
> (B) The producer certifies that the producer has not received cash benefits under any provision of this subchapter other than this part.
>
> (C) The producer's net farm income (as determined by the Secretary) for the most recent year is less than the producer's net farm income for the latest year in which no adjustment assistance was received by the producer under this part. . . .
>
> [and the producer has met certain other requirements with respect to seeking information and technical assistance.]

and issues a [group ]certification of eligibility." *See* 19
U.S.C. § 2401e(a)(1).

In order to qualify for cash benefits, an individual
producer must establish, among others things, that its net income
for the "most recent year is less than the producer's net farm
income for the latest year in which no adjustment assistance was
received by the producer under this part."[7]  19 U.S.C.
§ 2401e(a)(1)(C).  With respect to establishing net income,
"because of the *ex parte* nature of the [TAA] certification
process, and the remedial purpose of the [TAA] program, [the
Department] is obligated to conduct [its] investigation with the
*utmost regard for the interests of the petitioning workers.*"[8]

---

[7]  The Department's regulations require that an individual
producer demonstrate that its "net . . . fishing income was less
than during the producer's pre-adjustment year." 7 C.F.R.
§ 1580.301(e)(4).  Defendant's regulations define "net fishing
income" as "net profit or loss, excluding payments under [19
U.S.C. §§ 2401- 2401g], reported to the Internal Revenue Service
for the tax year that most closely corresponds with the marketing
year under consideration."  7 C.F.R. § 1580.102.  Defendant's
regulations define "pre-adjustment year" as "the tax year
previous to that associated with the most recent marketing year
in the initial producer petition."  7 C.F.R. § 1580.102.

[8]  Under 7 C.F.R. § 1580.301(e)(4), individual producers
must "certif[y] that net . . . fishing income was less than that
during the producer's pre-adjustment year," but the regulation
does not itself state which year's income must be less than that
of the "pre-adjustment year."  The definition of "net fishing
income," however, provides guidance.  As noted, the Department
defines "net fishing income" as "net profit or loss, excluding
payments under [C.F.R. Part 1580], reported to the Internal
Revenue Service for the tax year that most closely corresponds
with the marketing year under consideration."  7 C.F.R.
(continued...)

*See Van Trinh*, 29 CIT at 1066, 395 F. Supp. 2d at 1267 (citations omitted; second alteration added; emphasis in original).

B.     The Department's Use of Non-Consecutive Years

During the pendency of this action, this Court decided *Dus & Derrick, Inc. v. United States Secretary of Agriculture*, 31 CIT __, 469 F. Supp. 2d 1326 (2007) ("*Dus & Derrick I*"), and *Dus & Derrick, Inc. v. United States Secretary of Agriculture*, 32 CIT __, Slip Op. 08-19 (Feb. 6, 2008) (not reported in the Federal Supplement) ("*Dus & Derrick II*").  *Dus & Derrick I* held:

> [T]he court finds that the language
> of the statute did not invite the
> Department to devise an alternative
> definition for the phrase "most
> recent year."  For the court, that
> phrase can only refer to the year
> preceding that of the application.
> The statutory phrase "is less than"
> clearly indicates that a comparison
> is to be made between two years.
> Plaintiff was denied benefits based
> on a comparison between 2003 as the
> marketing year to 2001 as the
> pre-adjustment year.  A plain
> reading of the statute, however,
> demands that, for an application
> made in 2005, net income for 2004
> (the "most recent year") must be
> compared to that earned in 2003
> ("the latest year in which no

---

(...continued)
§ 1580.102.  "Marketing year" is defined as "the marketing season or year as defined by National Agriculture Statistic Service (NASS), or a specific period as proposed by the petitioners and certified by the [Department]."  *Id.*

> adjustment assistance was received
> by the producer").

31 CIT at __, 469 F. Supp. 2d at 1335 (footnote omitted).  The

court will follow *Dus & Derrick I* and *II* when making its findings

in this case.

Thus, as an initial matter, the court will not accord

*Chevron* deference to the Department's interpretation of 19 U.S.C.

§ 2401e as applied to the facts presented here.  For the court,

19 U.S.C. § 2401e(a)(1)(C) clearly directs that two consecutive

years should be compared when the producer has not previously

received TAA benefits.[9]  That is, the statute calls for a

comparison of "the most recent year" to plaintiff's January 19,

2005 application, i.e., plaintiff's fiscal year 2004, to "the

latest year in which no adjustment assistance was received" by

plaintiff, i.e., plaintiff's fiscal year 2003.  *See* 19 U.S.C.

§ 2401e(a)(1)(C).  Under its regulations, the Department compared

plaintiff's net income from fiscal year 2003, as "the tax year

that most closely corresponds with the marketing year under

consideration," with its income from fiscal year 2001, as "the

tax year previous to that associated with the most recent year in

_____

[9]  In *Dus & Derrick II*, the Court found that 19 U.S.C.
§ 2401e(a)(1)(C) does not always require that consecutive years
be compared.  When a producer has received benefits "in the year
. . . preceding the 'most recent year,' the statute directs the
comparison of non-consecutive years."  *See Dus & Derrick II*, 32
CIT at __, Slip Op. 08-19 at 3 n. 2.  Here, plaintiff has at no
time received benefits.

the initial [group] producer petition."  *See* Def.'s Resp. 20-21.

When a plain reading of the statute evinces Congress's clear

intent, as it does here, then "that is the end of the matter; for

the court as well as the agency, must give effect to the

unambiguously expressed intent of Congress."  *Chevron U.S.A.,*

*Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43

(1984).

It thus follows that the Department's regulations, which do

not provide for a comparison of consecutive years here, cannot

apply to applicants in plaintiff's circumstances, i.e., those

producers applying under re-certification, having not received

benefits under the original certification.  Accordingly, the

court again finds that, under the facts presented here, the

Department's regulations are an impermissible interpretation of

19 U.S.C. § 2401e(a)(1)(C) to the extent they require a

comparison of non-consecutive years.  Because the court finds

that Congress's intent manifested in 19 U.S.C. § 2401e(a)(1)(C)

is clear, this matter must be remanded for further

consideration.[10]

On remand, the Department is instructed to compare

plaintiff's net income from "the most recent year" to plaintiff's

---

[10]  It is worth noting that, as in the *Dus & Derrick* cases, the Department does not argue for the reasonableness of its regulation based on the availability of information or efficiency of administration.  *See Dus & Derrick II*, 32 CIT at __, Slip Op. 08-19 at 16.

application to "the latest year in which no adjustment assistance was received" by plaintiff.[11]  19 U.S.C. § 2401e(a)(1)(C). Because the Department has not yet compared plaintiff's net fishing income for the appropriate years, the court will not address the adequacy of the Department's inquiry into plaintiff's net income as reflected in documents other than plaintiff's tax returns.[12]  The Department is reminded, however, that the United States Court of Appeals for the Federal Circuit has stated that

---

[11]  Based upon plaintiff's filing its tax returns on a fiscal year basis and the Department, in turn, performing its net income analysis using plaintiff's fiscal years, this instruction calls for the Department to compare plaintiff's net income from its 2002 tax return (covering October 2002 through September 2003) and 2003 tax return (covering October 2003 through September 2004), along with other appropriate documentation submitted by plaintiff.

[12]  In 2001 and 2002, plaintiff took on loans from shareholders to pay outstanding expenses and "keep its boat on the water."  Pl.'s Br. 3.  It alleges:

> [T]hese loans had a perverse effect on the Plaintiff's net income as reported on its corporate tax returns over time: the loans did not appear as "income" on the Plaintiff's corporate tax return[s], but the Plaintiff's expenses——which were financed by the loans——appeared as losses.  In short, the loans were not credited toward income, but they appeared as deductions.

Pl.'s Br. 3.  Plaintiff's business also faced other "losses," including officer and employee compensation, repairs, and depreciation, which plaintiff claims varied significantly each year as plaintiff's business adjusted to declining shrimp prices. *See* Pl.'s Br. 3-4.  Thus, plaintiff maintains that its net income was "palpably declining," but that this decline was not reflected in its corporate tax returns.  Pl.'s Br. 4.

"the [Department's] regulations make it reasonably clear that the determination of . . . net fishing income is not to be made solely on the basis of tax return information if other information is relevant to determining the producer's net income from all . . . fishing sources." *Steen v. United States*, 468 F.3d 1357, 1363 (2006); *see also Durfey v. United States Sec'y of Agric.*, 32 CIT __, Slip Op. 08-55 (May 22, 2008).

CONCLUSION

Consistent with this Court's *Dus & Derrick* decisions, "[b]ecause the regulations at issue here govern situations other than those presented by the facts of this case, the court will not order their vacatur." *Dus & Derrick I*, 31 CIT at __, 469 F. Supp. 2d at 1338 (citing *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993)).  On remand, the Department shall: (1) reconsider plaintiff's application in a manner consistent with this opinion, by comparing plaintiff's net fishing income from its 2003 fiscal year (October 2002 through September 2003) to its net fishing income from its 2004 fiscal year (October 2003 through September 2004); (2) inform plaintiff of the methodology by which it will reconsider its application; (3) afford plaintiff the opportunity to place on the record additional proof of its net income in

accordance with 7 C.F.R. § 1580.301(e)(6);[13] (4) fully examine all information submitted by plaintiff in accordance with the remedial nature of the TAA statute; and, (5) fully explain its methodology and reasons for reaching its final determination with respect to plaintiff's application.

Remand results are due on or before August 26, 2008. Comments to the remand results are due on or before September 25, 2008. Replies to such comments are due October 9, 2008.

                                        /s/Richard K. Eaton
                                          Richard K. Eaton

Dated:     May 28, 2008
           New York, New York

_____

[13]   This provision provides:

           (6)   To comply with certifications in paragraph
                 (e)(4) of this section [regarding net
                 income], an applicant shall provide either--

                 (i) Supporting documentation from a
                 certified public accountant or
                 attorney, or

                 (ii) Relevant documentation and
                 other supporting financial data,
                 such as financial statements,
                 balance sheets, and reports
                 prepared for or provided to the
                 Internal Revenue Service or another
                 U.S. Government agency.

7 C.F.R. § 1580.301(e)(6).